**MUENSTER HOSPITAL DISTRICT,**
Appellant,

v.

Bonnie CARTER, M.D., and
Karla Davidson–Cox,
M.D., Appellees.

No. 2–06–301–CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 25, 2007.

Grace A. Weatherly, Casey Gayle Kent, for Bonnie CARTER, M.D.

Grace A. Weatherly, Wood, Thacker & Weatherly, P.C., Denton, for Appellee.

Panel M: GARDNER, WALKER, and McCOY, JJ.

## OPINION

SUE WALKER, Justice.

### I. INTRODUCTION

The primary issue we address in this accelerated, interlocutory appeal of the trial court's order denying Appellant Muenster Hospital District's plea to the jurisdiction is whether the retaliatory discharge claims of Appellees Dr. Bonnie Carter, M.D. and Dr. Karla Davidson–Cox, M.D. are germane to, connected with, and properly defensive to the breach of contract claims affirmatively seeking monetary relief that are asserted by the Hospital District against the doctors. Because we hold that the doctors' retaliatory discharge claims are germane to, connected with, and properly defensive to the Hospital District's breach of contract claims, we will affirm the trial court's denial of the Hospital District's plea to the jurisdiction. We will sustain the Hospital District's complaint that any waiver of immunity is limited to the damages that it affirmatively seeks in its breach of contract claims. Accordingly, we will modify the trial court's order denying the Hospital District's plea to the jurisdiction so that it reflects such a limited waiver of sovereign immunity by the Hospital District.

### II. FACTUAL AND PROCEDURAL BACKGROUND

In 2003, the doctors entered into written agreements with the Hospital District. Among other imposed requirements, the agreements provided that the doctors would conduct full-time medical practices

Victor N. Corpuz, Jackson Lewis LLP, Dallas, for Appellant.

at the hospital and at a separate health clinic, participate in the Hospital District's call schedules, and maintain residences within fifteen minutes of the hospital. In return, the Hospital District guaranteed each doctor a base income of $10,000 per month and an annual income of $120,000. The Hospital District also agreed to provide the doctors a relocation allowance and a practice commencement allowance and to make payments toward the doctors' professional liability insurance premiums and student loans.

Article VI of the agreements, titled "Reimbursement and Termination," outlines the circumstances under which each party could terminate the agreement and explains when the doctors would be required to reimburse the Hospital District for payments and allowances they had received. While maintaining a full-time practice and otherwise complying with the agreement, Dr. Carter reported to the Hospital District's board that she suspected patient neglect and Medicare fraud by a particular physician employed by the Hospital District. While maintaining a full-time medical practice and otherwise complying with the agreement, Dr. Davidson–Cox also complained that she suspected neglect by the same physician. One day after Dr. Carter and Dr. Davidson–Cox complained to the hospital administrator, they received written notification from the administrator that they were the subject of an investigation for disruptive behavior. Dr. Carter and Dr. Davidson–Cox assert that three months later, the Hospital District's Chief Financial Officer filed a groundless report of suicidal behavior by Dr. Carter with the Texas Medical Association.

Dr. Carter and Dr. Davidson–Cox subsequently tendered letters of resignation.[1]

Approximately one week after receiving the letters of resignation, the Hospital District sent demand letters to Dr. Carter and Dr. Davidson–Cox seeking reimbursement under section 6.1 of the agreements of all payments and allowances that the Hospital District had made to or on behalf of the doctors, $40,500.19 from Dr. Carter and $196,464.69 from Dr. Davidson–Cox. Neither Dr. Carter nor Dr. Davidson–Cox responded to the demand letters. Instead, they filed suit against the Hospital District alleging retaliatory discharge and breach of contract and seeking a declaratory judgment.

The Hospital District filed a plea to the jurisdiction, a general denial, and a counterclaim for breach of contract. The Hospital District alleged that Dr. Carter and Dr. Davidson–Cox had breached the agreements by resigning their staff privileges and that, accordingly, the Hospital District was entitled to reimbursement for the payments and allowances made to the doctors. In its plea to the jurisdiction, the Hospital District alleged that it possessed sovereign immunity with respect to the retaliatory discharge claims that the doctors had asserted pursuant to chapter 161 of the Texas Health and Safety Code. See TEX. HEALTH & SAFETY CODE ANN. ch. 161 (Vernon Supp.2006). After a hearing, the trial court denied the Hospital District's plea to the jurisdiction. This accelerated interlocutory appeal followed. See TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.2006).

■ In five issues, the Hospital District requests that we reverse the trial court's denial of its plea to the jurisdiction. In issue five, the Hospital District contends that it did not waive sovereign immunity on the doctors' retaliatory discharge claims

---

1. Dr. Davidson–Cox, in her resignation letter, alleged that the Hospital had terminated her employment and Dr. Carter, in her resignation letter, alleged constructive discharge.

because they were not compulsory counterclaims to the Hospital District's breach of contract claims. In issues one, two, three, and four, the Hospital District alleges that the "sue and be sued" language set forth in section 286.086 of the Texas Health and Safety Code does not constitute a clear and unambiguous waiver of sovereign immunity. *See* TEX. HEALTH & SAFETY CODE ANN. § 286.086 (Vernon 1999) (providing that the hospital board may sue and be sued). In light of the supreme court's decision in *Tooke v. City of Mexia*, holding that statutory "sue and be sued" language is not, by itself, a clear and unambiguous waiver of sovereign immunity, we sustain issues one, two, three, and four. *See* 197 S.W.3d 325, 342 (Tex.2006). Accordingly, the trial court's denial of the Hospital District's plea to the jurisdiction is sustainable only if—as alleged by the doctors—their claims are, as an offset, germane to, connected with, or properly defensive to the Hospital District's breach of contract claims seeking affirmative relief.

## III. STANDARD OF REVIEW

■ We review the trial court's ruling on a plea to the jurisdiction based on immunity from suit under a de novo standard of review. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004); *Tex. Natural Res. Conserv. Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex.2002). The plaintiff has the burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993); *Univ. of N. Tex. v. Harvey*, 124 S.W.3d 216, 220 (Tex.App.-Fort Worth 2003, pet. denied). When a plea to the jurisdiction challenges the existence of jurisdictional facts, our review is not restricted solely to the pleadings, but we must consider any relevant evidence submitted by the parties when necessary to resolve the jurisdictional issue raised. *See Bland ISD. v. Blue*, 34 S.W.3d 547, 555 (Tex.2000); *Tex. Tech Univ. v. Finley*, No. 07–06–0111–CV, 2006 WL 2361184, at *1–2, —— S.W.3d ——, —— (Tex.App.-Amarillo Aug.15, 2006, no pet.).

## IV. THE LAW CONCERNING SOVEREIGN IMMUNITY

■ Sovereign immunity is a common law doctrine that protects governmental entities from lawsuits for money damages. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex.2006). Political subdivisions of the state, including Hospital Districts, are entitled to such immunity— typically referred to as governmental immunity—unless it has been waived.[2] *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n. 3 (Tex.2003). Governmental immunity is best understood as two distinct types of immunity—immunity from suit, which bars a suit unless the state consented to it, and immunity from liability, which protects the state from judgments even if it did consent to the suit. *Reata*, 197 S.W.3d at 374; *Tooke*, 197 S.W.3d at 332. The first type of sovereign immunity, immunity from suit, deprives a trial court of subject matter jurisdiction. *See Miranda*, 133 S.W.3d at 224. However, even when a governmental entity is granted immunity from suit, it may waive that immunity under certain circumstances. *See Reata*, 197 S.W.3d at 377.

■ One instance in which a governmental entity waives governmental immunity occurs when the governmental entity files suit asserting affirmative claims for

---

2. The Muenster Hospital District is a political subdivision of the state. *See* Act of June 16, 1965, 59th Leg., R.S., ch. 477, 1965 Tex. Gen. Laws 984, 984–91, *amended by* Act of May 28, 2001, 77th Leg., R.S., ch. 428, §§ 2.01–03, 2001 Tex. Gen. Laws 816, 816–17.

relief; the governmental entity waives its immunity concerning claims against it that are germane to, connected with, and properly defensive to the matters on which the governmental entity based its claims for affirmative relief. *Id.; Kinnear v. Tex. Comm'n on Human Rights*, 14 S.W.3d 299, 300 (Tex.2000); *Anderson, Clayton & Co. v. State ex rel. Allred*, 122 Tex. 530, 62 S.W.2d 107, 110 (1933). *Cf. State v. Humble Oil & Ref. Co.*, 141 Tex. 40, 169 S.W.2d 707, 708–10 (1943) (providing example of when adverse party's offset claim was not "dependent upon, connected with, or [grown] out of the subject matter of [the State's] suit"). That is, when a governmental entity asserts affirmative claims for relief, adverse parties may assert, "as an offset, claims germane to, connected with, and properly defensive to those asserted by the governmental entity." *Reata*, 197 S.W.3d at 377.

In *Reata*, the City of Dallas issued a temporary license to Dynamic Cable Construction Corporation, Inc. to install fiber optic cable in Dallas. *Id.* at 373. Dynamic subcontracted with Reata to perform the drilling for the project and Reata inadvertently drilled into a water main, causing flooding of a nearby building owned by Southwest Properties Group, Inc. *Id.* After Southwest sued Dynamic and Reata to recover the damages it suffered from the flooding, Reata asserted a third party claim against the City of Dallas for negligently misidentifying the water main's location. *Id.* Before answering Reata's petition, the City intervened in the case, asserting negligence claims against Dynamic. *Id.* The Texas Supreme Court held that the City's decision to file a suit for damages amounted to a decision to leave its sphere of immunity from suit for claims against it which were germane to, connected with, and properly defensive to claims the City asserted and that the City

was not immune from Reata's claims against it to the extent that Reata's claims resulted in an offset to the City's recovery. *Id.* at 377.

## V. APPLICATION OF THE LAW TO THE PRESENT FACTS

■ The Hospital District argues that it did not waive its sovereign immunity for the doctors' retaliatory discharge claims because the doctors' claims are not compulsory counterclaims to the Hospital District's breach of contract claims. But we must analyze the issue applying a different test. A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." TEX.R. CIV. P. 97(a). In *Reata*, the supreme court formulated the test not as whether a claim is compulsory, but whether it is assertable as an offset and is germane to, connected with, and properly defensive to the governmental entity's claim. *Reata*, 197 S.W.3d at 377. Because a counterclaim could be compulsory under the rules of civil procedure but still not be germane to, connected with, and properly defensive to the underlying claim, *Reata* dictates a narrower waiver standard than that advocated by the Hospital District. *See City of Irving v. Inform Constr., Inc.*, 201 S.W.3d 693, 694 (Tex.2006) (holding that whether counterclaim is compulsory has no bearing on whether city waived immunity from suit).

The issue then, is whether the doctors' claims for retaliatory discharge are germane to, connected with, and properly defensive to the Hospital District's breach of contract claims to the extent that the doctors' claims offset those asserted by the

Hospital District.[3] *See Reata,* 197 S.W.3d at 373, 377. To prove a retaliatory discharge claim under chapter 161 of the Texas Health and Safety Code, the doctors must show that (1) they reported a violation; (2) the report was made to a supervisor, an administrator, a state regulatory agency, or a law enforcement agency; (3) the report was made in good faith; and (4) they were suspended, terminated, disciplined or otherwise discriminated against. *See* TEX. HEALTH & SAFETY CODE ANN. § 161.134(a), (f); *Tomhave v. Oaks Psychiatric Hosp.,* 82 S.W.3d 381, 385 (Tex.App.-Austin 2002, pet. denied). To prove its breach of contract counterclaim, the Hospital District must demonstrate (1) a valid contract, (2) that the Hospital District performed or tendered performance under the contract, (3) that Dr. Carter and Dr. Davidson–Cox breached the contract and, (4) that the Hospital District suffered damages as a result of the breach. *See Sullivan v. Smith,* 110 S.W.3d 545, 546 (Tex. App.-Beaumont 2003, no pet.); *Renteria v. Trevino,* 79 S.W.3d 240, 242 (Tex.App.-Houston [14th Dist.] 2002, no pet.). To establish the third element of its breach of contract claim, the Hospital District alleges that the breach occurred when the doctors resigned their privileges. Specifically, the Hospital District pleaded that the doctors had resigned and that the agreements "obligated them to maintain a full-time medical practice in Muenster. If that condition was not satisfied, the agreements allowed the Hospital to terminate the contracts for cause, and the balance of the amounts advanced to the doctors would become immediately due and payable."

Clearly the doctors' retaliatory discharge claims are germane to, connected with, and properly defensive to the Hospital District's breach of contract counterclaim.[4] If, in fact, the Hospital District engaged in the retaliatory discharge of Dr. Carter and Dr. Davidson–Cox, that fact is germane to, connected with, and properly defensive to the breach alleged by the Hospital District—the failure to maintain a full-time medical practice in Muenster. That is, being discharged is properly defensive to the failure to maintain a medical practice at the hospital. Because the doctors' retaliatory discharge claims are germane to, connected with, and properly defensive to the Hospital District's breach of contract counterclaim, we hold that the Hospital District has waived its immunity from suit for the retaliatory discharge claims. *See Reata,* 197 S.W.3d at 377. Thus, we overrule the portion of the Hospital District's fifth issue claiming that it did not waive immunity from suit concerning the retaliatory discharge claims.

◼ The waiver, however, extends only so far as the doctors' retaliatory discharge claims act as offsets to the Hospital District's breach of contract counterclaims seeking $40,500.19 from Dr. Carter and $196,464.69 from Dr. Davidson–Cox. *See id.* The Hospital District continues to have immunity from affirmative damage claims against it for monetary relief exceeding amounts necessary to offset its breach of contract claims. *See City of*

---

3. The Hospital District concedes that it is not immune from suit for the breach of contract claims asserted by the doctors-that is, the doctors' claims that the Hospital District breached its agreements with them. *See* TEX. LOC. GOV'T CODE ANN §§ 271.151–.160 (Vernon 2005).

4. Just as the supreme court in *Reata* saw "no substantive difference between a decision by the City to file an original suit and the City's decision to file its claim as an intervenor[,]" we see no substantive difference between a decision by the Hospital District to file an original suit and its decision to file its breach of contract claim as a counterclaim. *See* 197 S.W.3d at 377.

*Irving,* 201 S.W.3d at 694. Thus, the maximum amount the doctors may seek to recover in their retaliatory discharge claims is limited to the total affirmative relief recovered by the Hospital District in its breach of contract counterclaim. *See id.* We sustain the portion of the Hospital District's fifth issue raising this matter.[5]

## VI. Conclusion

Having sustained the Hospital District's first, second, third, and fourth issues, we hold that section 286.086 of the Texas Health and Safety Code does not constitute a clear and unambiguous waiver of the Hospital District's immunity from suit. Having overruled the portion of the Hospital District's fifth issue challenging its waiver of immunity from suit for the doctors' retaliatory discharge claims, we affirm the trial court's denial of the Hospital District's plea to the jurisdiction. Having sustained the portion of the Hospital District's fifth issue challenging the scope of the waiver found by the trial court, we modify the trial court's order denying the Hospital District's plea to the jurisdiction so that the last sentence of the order reads, "It is accordingly ORDERED that Defendant's Plea to the Jurisdiction is hereby DENIED to the full extent of Defendant's affirmative claims for monetary relief." As modified, we affirm the trial court's order denying the Hospital District's plea to the jurisdiction.

---

5. This opinion deals only with the Hospital District's immunity from suit and expressly does not address immunity from liability.