COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-466-CV

 

LENORE
UNKEFER                                                                        APPELLANT

 

   V.

 

TEXAS YOUTH COMMISSION                                                        APPELLEE



 

                                              ------------

 

           FROM THE 352nd DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------      

I. 
Introduction

In two
issues, Appellant Lenore Unkefer challenges the trial court=s order
granting Appellee Texas Youth Commission=s (ATYC@) plea
to the jurisdiction and dismissing Unkefer=s gender
discrimination, retaliation, wrongful termination, and breach of contract
claims.  We will affirm.

 








 

II.  Factual
and Procedural Background

Unkefer
began working for TYC in 1998 as a juvenile correction officer.  During the new employee orientation, TYC gave
Unkefer copies of the Personnel Policy and Procedure Manual (APRS
Manual@).  Pursuant to the PRS Manual, TYC employees in
their first six months of employment could be terminated at any time if a
supervisor determined that termination was in the best interest of the
agency.  TYC employees employed for more
than six months, however, attained the right to complain through a TYC
grievance procedure that their employment was terminated without cause.  








TYC
terminated Unkefer=s employment in October
2003.  The events leading to Unkefer=s
termination occurred while she was working at Willoughby HouseCa TYC
halfway house for female juvenile offenders. 
In August 2003 Unkefer was suspended because she had stepped outside to
her car, leaving the facility short of the required staff/student ratio.  After Unkefer provided a statement concerning
this event, she filed a grievance questioning the confidentiality and integrity
of the investigation that led to her suspension.  In September 2003, Unkefer faxed a letter to
the Executive Director of Willoughby HouseCSteve
RobinsonCrequesting
that Robinson suspend Unkefer=s supervisor
because the Willoughby House had quit conducting a program for youth and had
become dangerous.  On October 1, 2003,
Unkefer received a letter from her immediate supervisor advising her that the
supervisor was recommending that Unkefer be terminated.  On October 24, 2003, Unkefer received a
letter from another supervisor informing Unkefer that her Aemployment
with TYC . . . at Willoughby House is terminated effective October 20, 2003 at
5:00 p.m.@ 


Pursuant
to the PRS Manual, Unkefer filed a grievance, the TYC held a hearing thereon,
and the TYC hearing officer recommended that Unkefer=s
termination be sustained.  In April 2004,
the TYC Executive Director rendered his final decision upholding Unkefer=s
termination. 

Unkefer
filed her discrimination and retaliation complaints with the Texas Commission
on Human Rights (ATCHR@) in
July 2004.  In that complaint, Unkefer
alleged that the latest act of discrimination by TYC occurred on October 20,
2003Cthe date
she was terminated.  In September 2004,
Unkefer received a letter from the Texas Workforce Commission advising her that
she had a right to file a civil action in state court within sixty days from
receipt of the letter.  On October 8,
2004, Unkefer filed suit in state court against the TYC for wrongful
termination, gender discrimination, retaliation, and breach of contract.  








TYC
filed a plea to the jurisdiction arguing that (1) the trial court lacked
jurisdiction over Unkefer=s discrimination and retaliation
claims because she  failed to file her
complaint with the TCHR within 180 days of the date of the alleged unlawful
employment act, and (2) TYC retained sovereign immunity from Unkefer=s breach
of contract and wrongful termination claims. 
The trial court granted TYC=s plea
to the jurisdiction, and Unkefer timely filed her notice of appeal.  

III.  TYC=s Plea
to the Jurisdiction

A.  Standard of Review

A plea
to the jurisdiction challenges the trial court=s
authority to determine the subject matter of the action.  Tex. Dep=t of Transp.
v. Jones, 8 S.W.3d 636, 638 (Tex. 1999).  Whether a trial court has subject matter
jurisdiction and whether a pleader has alleged facts that affirmatively
demonstrate the trial court's subject matter jurisdiction are questions of law
that we review de novo.  Tex. Dep't of
Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004); Tex.
Natural Res. Conservation Comm'n v. IT‑Davy, 74 S.W.3d 849, 855 (Tex.
2002).  The plaintiff has the burden to
plead facts affirmatively showing that the trial court has jurisdiction.  Tex. Ass=n of
Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex.
1993); Univ. of N. Tex. v. Harvey, 124 S.W.3d 216, 220 (Tex. App.CFort
Worth 2003, pet. denied).  








When a
plea to the jurisdiction challenges only the pleadings, we determine whether
the pleader has alleged facts that affirmatively demonstrate the trial court's
jurisdiction to hear the cause.  Miranda,
133 S.W.3d at 226; Tex. Ass'n of Bus., 852 S.W.2d at 446.  We construe the pleadings liberally in favor
of the pleader, look to the pleader's intent, and accept as true the factual
allegations in the pleadings.  See
Miranda, 133 S.W.3d at 226, 228; City of Fort Worth v. Crockett, 142
S.W.3d 550, 552 (Tex. App.CFort
Worth 2004, pet. denied).  If the
pleadings do not contain sufficient facts to affirmatively demonstrate the
trial court's jurisdiction but do not affirmatively demonstrate incurable
defects in jurisdiction, the issue is one of pleading sufficiency, and the
plaintiff should be afforded the opportunity to amend.  Miranda, 133 S.W.3d at 226; County
of Cameron v. Brown, 80 S.W.3d 549, 555 (Tex. 2002). If the pleadings
affirmatively negate the existence of jurisdiction, then a plea to the
jurisdiction may be granted without allowing the plaintiff an opportunity to
amend.  Miranda, 133 S.W.3d at 226‑27.








If a
plea to the jurisdiction challenges the existence of jurisdictional facts, we
consider relevant evidence submitted by the parties when necessary to resolve
the jurisdictional issues raised, as the trial court is required to do.  See Bland ISD v. Blue, 34 S.W.3d 547,
555 (Tex. 2000) (confining the evidentiary review to evidence that is relevant
to the jurisdictional issue).  We take as
true all evidence favorable to the nonmovant and indulge every reasonable
inference and resolve any doubts in the nonmovant=s
favor.  Miranda, 133 S.W.3d at
228.  If the evidence creates a
fact question regarding the jurisdictional issue, then the trial court cannot
grant the plea to the jurisdiction, and the fact question will be resolved by
the fact finder.  Id. at 227‑28;
Bland, 34 S.W.3d at 555.  If the
relevant evidence is undisputed or fails to raise a fact question on the
jurisdictional issue, however, the trial court rules on the plea to the
jurisdiction as a matter of law.  Miranda,
133 S.W.3d at 227‑28; Bland, 34 S.W.3d at 555.

B.  Discrimination and Retaliation Claims

In her
first point, Unkefer makes two arguments. 
First, she claims that she did timely file her discrimination and
retaliation claims with the TCHR and that the trial court erred by granting TYC=s plea
to the jurisdiction on the ground that she did not.  And second, she argues that any failure by
her to timely file her discrimination and retaliation claims with the TCHR
merely creates a statute of limitations affirmative defense for TYC, but does
not deprive the trial court of jurisdiction and may therefore not be the basis
of a plea to the jurisdiction.








Unkefer=s
discrimination and retaliation claims allege causes of action under the Texas
Labor Code.[2]  The Labor Code requires that these claims be
filed with the Equal Employment Opportunity Commission (AEEOC@) or the
TCHR within 180 days after the alleged unlawful employment practice
occurred.  See Tex. Lab. Code Ann. ' 21.202
(Vernon 2006); Cooper-Day v. RME Petroleum Co., 121 S.W.3d 78, 83 (Tex.
App.CFort
Worth 2003, pet. denied).  The 180-day
time limit begins when the plaintiff is informed of the allegedly
discriminatory employment decision, not when that decision comes to fruition.  Specialty Retailers, Inc. v. DeMoranville,
933 S.W.2d 490, 492 (Tex. 1996).  This
time limit is mandatory and jurisdictional. 
Schroeder v. Tex. Iron Works, Inc., 813 S.W.2d 483, 486 (Tex.
1991); Cooper-Day, 121 S.W.3d at 83. 
If a plaintiff fails to adhere to the 180-day time limit, the trial
court is without subject matter jurisdiction. 
See Czerwinski v. Univ. of Tex. Health Sci. Ctr., 116 S.W.3d 119,
122 (Tex. App.CHouston [14th Dist.] 2002, pet.
denied).  













Unkefer
argues that the 180-day time period for filing her claims with the TCHR started
in April 2004 when, in her TYC grievance procedure, the TYC executive director
rendered his final decision upholding her termination.  TYC contends and the case law holds, however,
that the statutory 180-day time limit began to run when Unkefer received her
supervisor=s letter recommending that she
be terminated; that is, Unkefer was required to file her claims with the TCHR
within 180 days after the alleged unlawful employment practice occurred.  See Tex.
Lab. Code Ann. ' 21.202; Specialty Retailers,
Inc., 933 S.W.2d at 492 (holding that the proper focus is upon the time of
the discriminatory acts, not the time when the consequences of discriminatory
acts become most painful); Cooper-Day, 121 S.W.3d at 83.  The alleged unlawful employment practices
giving rise to Unkefer=s discrimination and retaliation
claims occurred at the latestCbased on
Unkefer=s
pleading and on the jurisdictional evidence submitted to the trial courtCon
October 24, 2003 when she received notice that she had been terminated.[3]  Unkefer therefore had until April 21, 2004C180 days
from October 24, 2003Cto file her complaint with the
TCHR.  Because Unkefer did not file her
complaint with the TCHR until July 9, 2004, the TCHR was required to dismiss
the complaint.  See Tex. Lab. Code Ann. '
21.202.  Unkefer did not file her
complaint with TCHR within the statutory 180-day time period, so the trial
court lacked jurisdiction over her claim.[4]
See id.; Specialty Retailers, Inc., 933 S.W.2d at 493.  

Unkefer
also argues that the 180 day time limit is a statute of limitations, and is
therefore an affirmative defense that cannot be the basis for sustaining a plea
to the jurisdiction.  But the case law is
to the contrary.  The failure to file a
complaint with the EEOC or the TCHR within 180 days of the date on which the
alleged unlawful employment practice occurred completely divests the state
trial court of subject matter jurisdiction over the complaint.  See El Paso County v. Navarrete, 194
S.W.3d 677, 683 (Tex. App.CEl Paso
2006, pet. denied); Cooper-Day, 121 S.W.3d at 83; Czerwinski, 116
S.W.3d at 120.

We
overrule Unkefer=s first issue.  

C.  Breach of Contract and Wrongful Termination
Claims

 








In her
second point, Unkefer argues that the trial court erred by dismissing her
breach of contract and wrongful termination claims.  Specifically, Unkefer contends that, based on
the provisions of its PRS Manual, TYC entered into an employment contract with
her that limited its ability to terminate her without just cause and thereby
consented to a waiver of its sovereign immunity concerning the contract.  TYC in its appellate brief presumes that a
contract exists and argues that, nonetheless, Unkefer=s breach
of contract and wrongful termination claims are barred by sovereign immunity. 








Sovereign
immunity is best understood as two distinct types of immunityCimmunity
from suit, which bars a suit unless the State consented to it, and immunity
from liability, which protects the State from judgments even if it did consent
to the suit.  Reata Constr. Corp. v.
City of Dallas, 197 S.W.3d 371, 374 (Tex. 2006); Tooke v. City of Mexia,
197 S.W.3d 325, 332 (Tex. 2006).  The
first type of sovereign immunity, immunity from suit, deprives a trial court of
subject matter jurisdiction. See Miranda, 133 S.W.3d at 224.  While sovereign immunity refers to the State=s
immunity, governmental immunity refers to immunity extended to political
subdivisions of the State.  See
Sanders v. City of Grapevine, 218 S.W.3d 772, 776 n.1 (Tex. App.CFort
Worth 2007, pet. filed).  Political
subdivisions of the state, including TYC, are entitled to such immunity unless
it has been waived.  See Muenster
Hosp. Dist. v. Carter, 216 S.W.3d 500, 503 (Tex. App.CFort
Worth 2007, no pet.).

In a
suit against a governmental unit, the plaintiff must affirmatively demonstrate
the court=s jurisdiction by alleging a
valid waiver of immunity.  Dallas Area
Rapid Transit v. Whitley, 104 S.W.3d 540, 542 (Tex. 2003).  A plaintiff alleges a valid waiver of
immunity by alleging such in its petition either by reference to a statute or
to express legislative permission.  Jones,
8 S.W.3d at 638.  To determine whether
the plaintiff has met that burden, we consider the facts alleged by the
plaintiff and, to the extent it is relevant to the jurisdictional issue, the
evidence submitted by the parties.  Tex.
Natural Res. Conservation Comm=n v.
White, 46 S.W.3d 864, 868 (Tex. 2001).








The
Texas Supreme Court has unequivocally held that a private citizen must have
legislative consent to sue the State on a breach of contract claim.  See Tooke, 197 S.W.3d at 332-33.  The courts of appeals have similarly held the
same for wrongful termination claims.  See,
e.g., Salazar v. Lopez, 88 S.W.3d 351, 352-53 (Tex. App.CSan
Antonio 2002, no pet.).  A governmental
unit waives its immunity from liability by entering into a contract with a
private citizen, but does not waive its immunity from suit by doing so.  See Tooke, 197 S.W.3d at 332.  Accordingly, even if a valid contract exists,
a plaintiff must still affirmatively establish legislative consent to sue the
governmental unit.  See City of Fort
Worth v. Pastusek Indus., Inc., 48 S.W.3d 366, 372 (Tex. App.CFort
Worth 2001, no pet.).  

Assuming
that a valid contract did exist between Unkefer and TYC,[5]
Unkefer still had the burden of pleading a valid waiver of immunity from suit
either by reference to a statute or to express legislative permission.  See Jones, 8 S.W.3d at 638.  Unkefer=s
petition, however, does not reference any statute or other legislative
permission for her breach of contract and wrongful termination suit against
TYC.








Construing
Unkefer=s
pleadings liberally in her favor, looking to her intent, accepting as true the
factual allegations in the pleadings, and considering, to the extent it is
relevant to the jurisdictional issue, the evidence submitted by the parties, we
hold that Unkefer did not affirmatively plead or produce jurisdictional
evidence showing a waiver of TYC=s
immunity from suit for her breach of contract or wrongful termination
claims.  See Miranda, 133 S.W.3d
at 226-28; Salazar, 88 S.W.3d at 353; see also Nivens v. City of
League City, No. 01-05-00335-CV, 2007 WL 1018306, at *2 (Tex. App.CHouston
[1st Dist.] Apr. 5, 2007, pet. filed) (holding that trial court did not err by
granting governmental unit=s plea
to the jurisdiction when plaintiff did not plead sufficient facts to establish
a waiver of the governmental unit=s
immunity).  The trial court properly
granted TYC=s plea to the jurisdiction with
respect to Unkefer=s breach of contract and
wrongful termination claims; we overrule Unkefer=s second
point.

IV.  Conclusion

Having
overruled both of Unkefer=s issues, we affirm the trial
court=s order
granting TYC=s plea to the jurisdiction.

 

 

                SUE WALKER

                JUSTICE

 

PANEL F: WALKER, HOLMAN,
and GARDNER, JJ.

 

 

DELIVERED: June 21, 2007











[1]See Tex. R. App. P. 47.4.





[2]At TYC=s request, the trial
court previously ordered Unkefer=s suit removed to federal court.  The federal court partially granted TYC=s motion for summary
judgment, dismissed all of Unkefer=s Title VII claims, and remanded Unkefer=s remaining state law
claims back to the trial court. 
Consequently, only Unkefer=s Labor Code claims are at issue here.





[3]The complaint that
Unkefer actually filed with the TCHR alleges an even earlier date; in the box
titled ADate(s) Discrimination
Took Place,@ Unkefer noted that the
earliest possible date was A10-20-2003" and the latest possible date was
A10-20-2003.@  





[4]In her briefs to this
court, Unkefer argues that she was entitled to rely upon the TCHR Aright to sue@ letter giving her sixty
days to file suit.  But the statute
requires that to invoke the trial court=s jurisdiction, a claim must have been filed with
the EEOC or TCHR within A180 days@ of the alleged unlawful
employment practice.  See Tex. Lab. Code Ann. ' 21.202.  And we are to employ a de novo review in
determining whether the trial court had subject matter jurisdiction.  See Miranda, 133 S.W.3d at 226.  Thus, the TCHR letter allegedly giving
Unkefer a Aright to sue@ does not impact our
analysis of the trial court=s jurisdiction.





[5]Although we assume that
an employment contract existed between TYC and Unkefer, we have serious doubts
as to whether the employment policy manual at issue here created an employment
contract.  See Brown v. Sabre, Inc.,
173 S.W.3d 581, 585 (Tex. App.CFort Worth 2005, no pet.) (holding that except in
a few circumstances, Aemployee handbooks and
policy manuals constitute general guidelines in the employer/employee
relationship and do not create implied contracts between the employer and
employee@).