

# NUMBER 13-07-00484-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

LA JOYA INDEPENDENT
SCHOOL DISTRICT,                                                      Appellant,

v.

BIO-TECH SOLUTIONS, INC.,                                           Appellee.

**On appeal from the 275th District Court of Hidalgo County, Texas.**

# MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Garza
### Memorandum Opinion by Justice Yañez

In this interlocutory appeal, La Joya Independent School District ("the District")
appeals from the trial court's order denying its plea to the jurisdiction in a suit filed by
appellee, Bio-Tech Solutions, Inc. ("Bio-Tech").[1]  In a single issue, the District contends
that the trial court erred in denying its plea to the jurisdiction.  Because we conclude that

---

[1] Bio-Tech asserts claims for breach of contract, quantum meruit, and promissory estoppel.

the District waived its immunity by requesting affirmative relief in the trial court in the form of filing a counterclaim against Bio-Tech and a third-party petition against Commercial Roofing Systems ("CRS"), we affirm the trial court's denial of the District's plea to the jurisdiction. However, we also hold that the District's waiver of immunity is limited to the damages that it affirmatively seeks in its counterclaim and third-party petition. Accordingly, we modify the trial court's order denying the District's plea to the jurisdiction so that it reflects such a limited waiver of sovereign immunity by the District, and as modified, we affirm.

## I. Background

In June 2004, Bio-Tech was engaged in a mold-remediation project for the District at a middle school. Later that month, severe rains and flooding caused extensive damage to the school's ceilings, floors, and walls, resulting in the exposure of asbestos in ceiling and floor tiles. Bobby Garcia, president of Bio-Tech, testified that he was approached by Ricardo Vela, Assistant Superintendent for Administration and Finance for the District, to undertake asbestos removal and reconstruction of the building.[2] Garcia testified that the scope of the work was pursuant to an "abatement plan" that had been prepared by Health & Safety Management, Inc. ("HSM")[3] Garcia testified that because of the emergency nature of the work, there was no time to pursue normal bidding procedures or convene a District board meeting. Garcia agreed that Bio-Tech would perform the work. Garcia testified that, approximately three weeks after work on the project commenced, he

---

[2] Garcia testified at an evidentiary hearing on the District's plea to the jurisdiction on May 8, 2007.

[3] We note that the abatement plan prepared by Health & Safety Management, Inc. is titled "Indoor Air Quality Survey and Remediation Plan," and is dated May 17, 2004, weeks before the rain and flood-related damage occurred. The plan does not mention asbestos-related damage or asbestos removal.

2

requested a letter authorizing the work. Alfredo Vela, Administrative Assistant for Budget and Finance for the District, gave Garcia a letter dated July 21, 2004, authorizing Bio-Tech to perform the work.

In August 2004, Bio-Tech completed the work and submitted invoices to the District. The District engaged the services of a consultant to review the invoices. In November 2004, the District's board met and approved payment of one-half the invoiced amount, with payment of the remaining half contingent on further review by the District's consultant. Eventually, the District refused to pay the remaining balance. On August 31, 2005, Bio-Tech filed suit, alleging causes of action for breach of contract, quantum meruit, and promissory estoppel.

On October 21, 2005, the District answered, asserting: (1) that Bio-Tech's claims are barred by sovereign immunity and governmental immunity, and (2) a counterclaim for overpayment, contending that the amount paid to Bio-Tech exceeded the reasonable value of the work performed by at least $153,841.85. In January 2006, the District filed a third-party petition against Commercial Roofing Systems, Inc. ("CRS"), the contractor that performed roof-repair work on the school building. The District contends that CRS was negligent in failing to make the roof watertight, which resulted in the damage to the building. The District asserts that CRS is liable for "part or all" of any amount the District may be adjudged to owe to Bio-Tech.

On August 11, 2006, the District filed its plea to the jurisdiction. The trial court held an evidentiary hearing on May 8, 2007. On June 13, 2007, the trial court denied the plea to the jurisdiction, finding that questions of material fact existed as to (1) "[t]he existence of a written, valid contract executed by an authorized person" between the District and Bio-

3

Tech and (2) whether the District "waived immunity by its conduct under the extraordinary factual circumstances existing in this cause."

## II. Standard of Review and Applicable Law

Sovereign immunity, encompassing both immunity from suit and immunity from liability, protects political subdivisions of this state from lawsuits for money damages; sovereign immunity from suit deprives a trial court of subject matter jurisdiction.[4] Absent an express waiver of its sovereign immunity, the State is generally immune from suit.[5] As a general rule, courts have deferred to the legislature to waive sovereign immunity.[6] A plea questioning the trial court's jurisdiction raises a question of law that we review de novo.[7]

The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject matter jurisdiction.[8] We take as true the facts pleaded in the plaintiff's petition in determining whether those facts support jurisdiction in the trial court, and we may review the entire record to determine if there is jurisdiction.[9] Indeed, a court deciding a plea to the jurisdiction is not required to look solely to the pleadings, but may also consider evidence, and must do so when necessary to resolve the jurisdictional issues raised.[10] When necessary, we will consider relevant evidence submitted by the parties to

---

[4] *Tex. Dep't of Transp. v. Crockett*, 257 S.W.3d 412, 414 (Tex. App.–Corpus Christi 2008, pet. denied) (citing *Reata Constr. Corp. v. City of Dallas (Reata II)*, 197 S.W.3d 371, 374 (Tex. 2006)).

[5] *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007); *Crockett*, 257 S.W.3d at 414.

[6] *Crockett*, 257 S.W.3d at 414.

[7] *Holland*, 221 S.W.3d at 642; *Crockett*, 257 S.W.3d at 414.

[8] *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

[9] *Id.*

[10] *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000); *see County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

resolve the jurisdictional dispute if the plea to the jurisdiction implicates the merits of the plaintiff's cause of action and relevant evidence is submitted by the parties.[11] The reviewing court, however, should confine itself to the evidence relevant to the jurisdictional issue.[12]

We take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor.[13] If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact question will be resolved by the fact finder.[14] If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, however, the trial court rules on the plea to the jurisdiction as a matter of law.[15]

A party may not challenge conclusions of law for factual sufficiency, but we may review conclusions of law to determine their correctness based upon the facts.[16] We will uphold a conclusion of law if the judgment can be supported on any legal theory supported by the evidence.[17] We review conclusions of law de novo,[18] and we will not reverse them

---

[11] *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (citing *Bland*, 34 S.W.3d at 555).

[12] *Bland*, 34 S.W.3d at 555.

[13] *Miranda*, 133 S.W.3d at 228.

[14] *Id*. at 227-28; *Bland*, 34 S.W.3d at 555.

[15] *Miranda*, 133 S.W.3d at 227-28; *Bland*, 34 S.W.3d at 555.

[16] *Citizens Nat'l Bank v. City of Rhome*, 201 S.W.3d 254, 256 (Tex. App.–Fort Worth 2006, no pet.).

[17] *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Tex. Dept. of Public Safety v. Stockton*, 53 S.W.3d 421, 423 (Tex. App.–San Antonio 2001, pet. denied).

[18] *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996).

unless they are erroneous as a matter of law.[19]

The Texas Local Government Code waives a local government's immunity from suit for certain contractual claims. Section 271.152 provides that:

> [a] local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.[[20]]

The statute defines a "contract subject to this subchapter" as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity."[21]

When sovereign immunity is implicated and a governmental entity seeks affirmative relief, it waives immunity from suit for any claim that is "germane to, connected with, and properly defensive to the [governmental entity's] claims, to the extent [the private entity]'s claims offset those asserted by the [governmental entity]."[22] As the supreme court has explained,

> To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it.[23]

A governmental entity's counterclaim seeking damages constitutes a waiver of "immunity

---

[19] *Stockton*, 53 S.W.3d at 423.

[20] TEX. LOC. GOV'T CODE ANN. § 271.152 (Vernon 2005).

[21] *Id.* § 271.151(2) (Vernon 2005).

[22] *Powell v. Tex. Dep't of Criminal Justice*, 251 S.W.3d 783, 791 (Tex. App.–Corpus Christi 2008, pet. filed) (citing *Sweeny Cmty. Hosp. v. Mendez*, 226 S.W.3d 584, 589 (Tex. App.–Houston [1st Dist.] 2007, no pet.)).

[23] *DeQuire v. City of Dallas*, 192 S.W.3d 663, 666 (Tex. App.–Dallas 2006), *rev'd on other grounds*, 249 S.W.3d 428 (Tex. 2008) (quoting *BHP Petroleum Co., Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990)).

from suit for claims germane to, connected with, and properly defensive to its counterclaim to the extent" the opposing party's claims act as an offset to the governmental entity's recovery.[24] The supreme court has implied that the term "properly defensive" is not intended to "restrict jurisdiction for the type of claim raised, but, rather, to restrict jurisdiction over the amount of a claim for damages against the governmental entity to the amount that the government actually recovers."[25] There is no substantive difference between a decision by the governmental entity to file an original suit and its decision to file a counterclaim.[26]

## III. Discussion

In its live petition, Bio-Tech asserts that the District waived its sovereign immunity: (1) by entering into a written contract in compliance with sections 271.151 and 271.152 of the local government code; (2) through its conduct in ratifying the contract; and (3) by filing a counterclaim for overpayment that is germane to and connected with Bio-Tech's claim. We begin by addressing Bio-Tech's breach of contract claim.

## A. Breach of Contract

Bio-Tech argues that the trial court did not err in denying the District's plea to the jurisdiction because section 271.152 of the local government code waives governmental immunity for breach of contract claims and "[a]t a minimum, . . . a fact issue exists as to the existence of a contract" with the District. According to Bio-Tech, the July 21, 2004 authorization letter from Alfredo Vela and the HSM remediation plan, taken together,

---

[24] *City of Dallas v. Bargman*, 207 S.W.3d 926, 931 (Tex. App.–Dallas 2006, no pet.) (citing *City of Irving v. Inform Constr., Inc.*, 201 S.W.3d 693, 694 (Tex. 2006) (per curiam)).

[25] *Sweeny*, 226 S.W.3d at 593-94 (citing *Reata II*, 197 S.W.3d at 377 n.3).

[26] *Muenster Hosp. Dist. v. Carter*, 216 S.W.3d 500, 505 n.4 (Tex. App.–Fort Worth 2007, no pet.).

"constitute a written contract as that term is used in [s]ection 271.151 of the Local Government Code."[27] Bio-Tech argues that "contracts may consist of multiple documents." In its plea to the jurisdiction, the District argued that "[t]here is no written contract that was ratified by [the District's] board of trustees." As noted, the trial court found there was a question of material fact as to "[t]he existence of a written, valid contract executed by an authorized person as between [the District and Bio-Tech]."

We agree with the District. Bio-Tech relies on *Courage Co. v. Chemshare Corp.*[28] as support for its argument that "contracts may consist of multiple documents." We find Bio-Tech's reliance on *Courage Co.* to be misplaced. *Courage Co.* did not involve a waiver-of-immunity issue.[29] In a recent case involving an alleged contract and waiver of immunity pursuant to section 271.152, this Court rejected the argument that Bio-Tech urges us to accept here.[30] As we noted, under sections 271.151 and 271.152, "for a contract to waive governmental immunity, it must be written and properly executed."[31] Here, we conclude that the July 21, 2004 authorization letter from Alfredo Vela and the HSM remediation plan do not constitute a "written contract stating the essential terms of the agreement" within the meaning of sections 271.151 and 271.152 of the local

---

[27] *See* TEX. LOC. GOV'T CODE ANN. § 271.152.

[28] *See Courage Co. v. Chemshare Corp.*, 93 S.W.3d 323, 333 (Tex. App.–Houston [14th Dist.] 2002, no pet.).

[29] *Id.* at 326-29.

[30] *See Vantage Sys. Design v. Raymondville Indep. Sch. Dist.*, No. 13-08-311-CV, 2009 Tex. App. LEXIS 2472, at *8 (Tex. App.–Corpus Christi April 9, 2009, no pet. h.) (rejecting applicability of "multiple document standard" to waiver of sovereign immunity by governmental entity).

[31] *See id.* Section 271.151(2) provides: "Contract subject to this subchapter" means a written contract stating the essential terms of the agreement for providing goods or services, to the local governmental entity that is properly executed on behalf of the local governmental entity." TEX. LOC. GOV'T CODE ANN. § 271.151(2) (Vernon 2005).

8

government code.[32] Accordingly, we hold that no question of material fact exists regarding the existence of a written valid contract in compliance with sections 271.151 and 271.152 between the District and Bio-Tech.[33]

## B. Waiver by Conduct

Bio-Tech also contends that the District waived its sovereign immunity by its conduct. Specifically, Bio-Tech alleged in its petition that the District "also waived its sovereign immunity through its conduct in ratifying the contract, since the work which was performed was authorized under the contract." In its brief, Bio-Tech argues that "[t]he extraordinary factual circumstances in the case at bar constitute a waiver by conduct exception to [the District's] claimed immunity." The trial court found that "a question of material fact exists with respect to whether [the District] waived immunity by its conduct under the extraordinary factual circumstances existing in this cause."

The supreme court has declined to apply a waiver-by-conduct exception,[34] and this

---

[32] We note that it is undisputed that neither the July 21, 2004 letter nor the HSM remediation plan mention a price for the proposed construction. It is also undisputed that the HSM remediation plan was not prepared by Bio-Tech and was prepared prior to the occurrence of the water-related damage at issue.

[33] We note that as alternative theories of recovery, Bio-Tech pleaded claims for quantum meruit and promissory estoppel. In its brief, Bio-Tech states that its "alternative pleading of quantum meruit in the instant case does not assert or even suggest that such a claim constitutes a waiver under Local Government Code section 271.152." Rather, the alternative pleading "is premised on the unlikely event the trier of fact determines that no written contract exists however; [sic] La Joya waived immunity by its conduct . . . ." Similarly, Bio-Tech notes that its alternative claim of promissory estoppel "does not assert or even suggest" a waiver under section 271.152, but is also "premised on the unlikely event the trier of fact determines that no written contract exists however; [sic] La Joya waived immunity by its conduct . . . ." As these arguments address the merits of Bio-Tech's claims and do not address jurisdictional facts, we do not address them. *See* TEX. R. APP. P. 47.1; *Bland*, 34 S.W.3d at 555.

[34] *See Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007) ("[The plaintiff] advances a waiver-by-conduct argument . . . but we have consistently rejected that position and held that 'the State does not waive its immunity from a breach-of-contract action by accepting the benefits of a contract.'") (quoting *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001)).

9

Court, relying on supreme court precedent, has declined to find such an exception.[35] We again decline to apply a waiver-by-conduct exception in this case. We do not believe that an equitable basis for such a waiver exists under the facts in this case. We hold that no fact question exists as to whether the District waived its immunity from suit by its conduct.

## C. Waiver by Filing Counterclaim

In its petition, Bio-Tech also asserts that the District waived its sovereign immunity by filing a counterclaim for overpayment. At the evidentiary hearing on the District's plea to the jurisdiction, Bio-Tech argued that the District waived its immunity from suit by seeking affirmative relief in the form of its counterclaim and its third-party petition against CRS. We agree.

As this Court has noted, "[w]hen sovereign immunity is implicated, however, and a governmental entity seeks affirmative relief, it waives immunity from suit for any claim that is 'germane to, connected with, and properly defensive to the [governmental entity's] claims, to the extent [the private entity]'s claims offset those asserted by the [governmental entity].'"[36] The supreme court in *Reata* restricted the waiver to only those claims that have a nexus with the governmental entity's claim.[37] The term "germane" has been defined as "closely akin," "being at once relevant and appropriate," "closely or significantly related," "relevant," and "pertinent."[38]

---

[35] *See City of Alton v. Sharyland Water Supply Corp.*, No. 13-06-038-CV, 2009 Tex. App. LEXIS 749, at *15 (Tex. App.–Corpus Christi Feb. 5, 2009, pet. filed) (op. on reh'g) (declining to create a waiver-by-conduct exception); *Patterson v.Gulf Marine Inst. of Tech.*, No. 13-06-067, 2008 Tex. App. LEXIS 1462, at *25-26 (Tex. App.–Corpus Christi Feb. 28, 2008, pet. denied) (mem. op.).

[36] *Powell*, 251 S.W.3d at 791.

[37] *Crockett*, 257 S.W.3d at 414-15 (citing *Reata II*, 197 S.W.3d at 377).

[38] *Id.* at 415 (citing *Sweeny*, 226 S.W.3d at 592).

Here, Bio-Tech initiated suit to recover for breach of contract. Bio-Tech claims that it has not been paid the balance due for the work it performed pursuant to the alleged contract with the District. The District filed a counterclaim, asserting that the amount it paid to Bio-Tech was at least $153,841.85 more than the reasonable value of the work Bio-Tech performed on the building. The parties' claims arise from the same transaction. Moreover, based on the parties' pleadings, Bio-Tech's claim that it has not been paid the balance due for the work it performed is "germane to" and "connected with" the District's claim that it overpaid for that work.

With regard to whether Bio-Tech's claim is "properly defensive to" the District's claim, the supreme court implied that the term "properly defensive" was not intended to "restrict jurisdiction for the type of claim raised, but, rather, to restrict jurisdiction over the amount of a claim for damages against the governmental entity to the amount that the government actually recovers."[39] Thus, the court has jurisdiction over Bio-Tech's claim insofar as it is not in excess of the District's counterclaim for overpayment. In other words, the District continues to have immunity from suit for any monetary relief exceeding the amount necessary to offset its overpayment claim.[40]

The District asserted in its third-party petition that if it is adjudged to owe Bio-Tech any amount, CRS is liable for part or all of that amount. The District's claim against CRS is that CRS's negligence in repairing the roof of the building resulted in the water damage. To establish CRS's negligence, the District must establish a duty, a breach of that duty,

---

[39] See Sweeny, 226 S.W.3d at 593-94 (citing Reata II, 197 S.W.3d at 377 n.3).

[40] See Muenster, 216 S.W.3d at 501 (holding waiver of immunity is limited to the damages that the governmental entity affirmatively seeks); see also City of Irving, 201 S.W.3d at 694 ("[T]he City retains immunity from suit . . . to the extent [the private party's] damages exceed amounts offsetting the City's monetary recovery, absent legislative waiver of that immunity.") (citing Reata II, 197 S.W.3d at 371).

11

and damages proximately caused by the breach.[41]  In its third-party petition, the District pleaded:

> As a result of [CRS's] negligen[ce,] . . . [the District] incurred costs for repairs to [the building].  Thus, [CRS] is liable to pay to [the District], part or all of the amount of money which [the District] may be adjudged to pay to [Bio-Tech] in its claim filed against [the District] in this lawsuit. . . . [T]he amount of money which [CRS] may be liable to pay to [the District], as damages for its negligence, is a common fact question in both claims [Bio-Tech's and the District's third-party petition], as it may determine the amount of money which [the District] may be adjudged to pay to [Bio-Tech], if any, in this lawsuit.

We conclude that Bio-Tech's claim against the District—that it has not been paid the balance due for the work it performed—is "germane to, connected with, and properly defensive to" the District's third-party petition against CRS.[42]

## IV.  Conclusion

We affirm the trial court's denial of the District's plea to the jurisdiction.  However, we hold that:  (1) no question of material fact exists as to the existence of a written valid contract in compliance with sections 271.151 and 271.152 of the local government code between the District and Bio-Tech; and (2) no question of material fact exists as to whether the District waived immunity by its conduct.  We also hold that the District's waiver of immunity is limited to the damages it affirmatively seeks in its counterclaim and its third-party petition.  Accordingly, we modify the trial court's order denying the District's plea to the jurisdiction so that it reflects such a limited waiver of sovereign immunity by the District,

---

[41] *See Kroger Co. v. Ellwood*, 197 S.W.3d 793, 794 (Tex. 2006).

[42] *See Sweeny*, 226 S.W.3d at 592 ("We view *Reata II* as having two dimensions of analysis:  first, the party's claim must be sufficiently related to the governmental unit's affirmative claim for relief, and second, the party's amount of a claim for damages against the governmental entity is restricted to the amount that the governmental entity will actually recover.").

and as modified, affirm.[43]

 

LINDA REYNA YAÑEZ,
Justice

Memorandum Opinion delivered and
filed this the 23rd day of April, 2009.

———

---

[43] *See Muenster*, 216 S.W.3d at 501; *City of Angleton v. USFilter Oper. Servs., Inc.*, 201 S.W.3d 677, 678 (Tex. 2006) (reversing court of appeals's judgment that governmental entity's counterclaim operated as complete waiver of immunity).