

NUMBER 13-07-640-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| TEXAS DEPARTMENT OF TRANSPORTATION | Appellant, |
| v. | |
| ALLAN A. CROCKETT AND GULF COAST CONTRACTORS, INC. | Appellees. |

### On appeal from the 107th District Court of Cameron County, Texas

# OPINION

### Before Justices Yañez, Rodriguez, and Vela
### Opinion by Justice Vela

Appellant, the Texas Department of Transportation ("TxDOT"), appeals from the denial of its plea to the jurisdiction regarding a counterclaim filed by appellees, Allan A. Crockett and Gulf Coast Contractors, Inc. (collectively "Crockett"). We reverse and render,

dismiss Crockett's counterclaim for lack of jurisdiction.

## I. BACKGROUND

TxDOT filed suit against Crockett for conversion because TxDOT inadvertently paid $149,362.23 to appellee, Gulf Coast Contractors, Inc., instead of paying that amount to Gulf Coast Landscape Services, Inc., a different and unrelated company. TxDOT intended that two checks be remitted to Gulf Coast Landscape Services, Inc., the company that performed landscaping services in question for TxDOT. Crockett filed an answer denying liability. Crockett also filed a counterclaim stating that TxDOT consistently underpaid Crockett for its mowing services and that the parties had entered into a series of forty seven contracts over the last six years.

Although the counterclaim does not specify the exact claim Crockett makes, it appears to be a loosely pleaded claim for breach of contract. Crockett also sought a "declaration from the court that it had been consistently underpaid for its services" and asked the court to "render a proper construction of the amounts to be paid under the contracts between the parties and require TxDOT to render a proper accounting."

By a plea to the jurisdiction, TxDOT urged that the counterclaim should be dismissed for lack of jurisdiction, asserting that it retained its sovereign immunity because Crockett's counterclaim was not germane to, connected with and properly defensive to TxDOT's conversion suit. TxDOT also urged that Crockett had not exhausted its administrative remedy to pursue the alleged underpayments through section 201.112 of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 201.112 (Vernon Supp. 2007).

2

## II. STANDARD OF REVIEW

Sovereign immunity, encompassing both immunity from suit and immunity from liability, protects political subdivisions of this state from lawsuits for money damages; sovereign immunity from suit deprives a trial court of subject matter jurisdiction. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). We review a trial court's ruling on a plea to the jurisdiction based on immunity from suit under a de novo standard of review. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). A governmental agency, such as TxDOT, is entitled to sovereign immunity unless immunity has been waived. *Reata*, 197 S.W.3d at 374. As a general rule, courts have deferred to the Legislature to waive sovereign immunity. *Id.* at 375. In Texas, the courts have made exceptions to immunity from suit when the waiver comports with the underlying policy concerns associated with sovereign immunity. *Id.* at 375-76.

## III. WAIVER OF IMMUNITY

A. Substantive Law

1. Waiver under *Reata*

TxDOT urges that it did not waive its immunity with respect to Crockett's counterclaim because the counterclaim does not meet the requirements for waiver set forth in *Reata*. In *Reata*, the Texas Supreme Court iterated that when a governmental entity files a lawsuit for damages against a private party, it is not immune from suit for claims against it that are "germane to, connected with, and properly defensive to" claims that the entity asserts, except for the amounts that exceed the amounts necessary to offset the

3

governmental entity's claim. *Id*. at 376-77. In *Reata*, the court explained that when:

> the governmental entity interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages, the entity will presumably have made a decision to expend resources to pay litigation costs. If the opposing party's claims can operate only as an offset to reduce the government's recovery, no tax resources will be called upon to pay a judgment, and the fiscal planning of the governmental entity should not be disrupted. Therefore, a determination that a governmental entity's immunity from suit does not extend to a situation where the entity has filed suit is consistent with the policy issues involved with immunity. In this situation, we believe that it would be fundamentally unfair to allow a governmental entity to assert affirmative claims against a party while claiming it had immunity as to the party's claims against it.

*Id*. at 375-76.

In addition, however, and very important to our analysis here, the *Reata* court restricted the waiver to only those claims that have a nexus with the governmental entity's claim. *Id*. at 377. The decision to file suit for damages "encompassed a decision to leave its sphere of immunity from suit for claims against it which are germane to, connected with and properly defensive to claims the city asserts." *Id*. A governmental entity retains immunity from suit as to those claims for monetary damages that are not germane to, connected with and properly defensive to the entity's claim. *City of Irving v. Inform Constr., Inc.*, 201 S.W.3d 693, 694 (Tex. 2006); *City of Angleton v. USFilter Operating Servs., Inc.*, 201 S.W.3d 677, 678 (Tex. 2006). By limiting the waiver to claims that are related to the sovereign's claim, policy decisions regarding government spending remain intact.

The term "germane" has been defined as "closely akin," "being at once relevant and appropriate," "closely or significantly related," "relevant," and "pertinent." *See Sweeney Comm. Hosp. v. Mendez*, 226 S.W.3d 584, 592 (Tex. App.–Houston [1st Dist.] 2007, no pet.) (citing MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 525 (11th ed. 2003)).

4

Additionally, the term "connected" means "united, joined or linked" and "joined together in sequence; linked coherently" and "having parts or elements logically linked together." *Id.* (citing MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 525 (11th ed. 2003); RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY 800 (2d ed. 2001)). *Mendez* suggests that the term "properly defensive" was not intended to "restrict jurisdiction for the type of claim raised, but, rather to restrict jurisdiction over the amount of a claim for damages against the governmental entity to the amount that the government actually recovers." *Id.* at 593-94.

Since *Reata*, several of our sister courts have analyzed what it means for a claim to be germane to, connected with and properly defensive. In *State v. Langley*, the Langleys asserted a counterclaim that the State had contracted with them for relocation expenses in response to an eminent domain action filed by the governmental entity. 232 S.W.3d 363, 367 (Tex. App.–Tyler 2007, no pet.). The Tyler court of appeals iterated that the Langleys' relocation, misrepresentation, and breach of contract claims were not germane to, connected with, and properly defensive to the eminent domain claims made by the State. *Id*. According to the Tyler court, the counterclaim issues were totally separate from the eminent domain claims. *Id*.

On the other hand, in *Muenster Hosp. Dist. v. Carter*, the Fort Worth court of appeals held that the doctors' retaliatory discharge claims were germane to, connected with and properly defensive to the hospital's breach of contract claim. 216 S.W.3d 500, 501 (Tex. App.–Fort Worth 2007, no pet.). The *Carter* panel opined that if the hospital district engaged in retaliatory discharge, that fact was germane to, connected with and properly defensive to the physician's alleged failure to maintain full time medical practices

5

at the hospital. *Id*. at 505. Likewise, in *Mendez*, the court held that a physician's counterclaims for tortious interference, defamation and retaliation were germane to, connected with and properly defensive to the hospital's claim of breach of an employment contract. 226 S.W.3d at 586. The court said that although the elements of the claim differed, the core facts were the same—determining whether the hospital and the physician met their obligations under the contract was necessary to both the hospital and the physician's claims. *Id*. at 593.

    2. Elements of the Claim and Counterclaim

Here, Crockett's counterclaim is for allegedly being underpaid on forty seven contracts. The elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Southwell v. University of Incarnate Word*, 974 S.W.2d 351, 354-55 (Tex. App.–San Antonio 1998, pet. denied). The claim of conversion was based on Crockett's retention of two checks in January 2002, one for $26,025.59 and one for $123,336.64, checks inadvertently paid to Crockett for work done by a different company. The elements of conversion are: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused the plaintiff's demand for the return of the property. *Huffmeyer v. Mann*, 49 S.W.3d 554, 558 (Tex. App.–Corpus Christi 2001, no pet.).

Crockett does not claim that it did not cash the checks in question, nor does it claim other available defenses to a conversion claim, such as qualified good-faith refusal or a

6

superior title or right to the funds.  *See Stein v. Mauricio*, 580 S.W.2d 82, 83 (Tex. App.–San Antonio 1979, no writ); *Enduro Oil Co. v. Parish & Ellison*, 834 S.W.2d 547, 549 (Tex. App.–Houston [14th Dist.] 1992, writ denied).  Rather, the claims arise from distinct conduct at different times and under very different circumstances.  The two claims are not related.

Additionally, the counterclaim was not germane or connected because it embraced entirely different elements from the conversion claim and sought recovery for claims totally unrelated to the alleged converted checks.  The counterclaim does not arise from the same transaction or occurrence that is the subject matter of TxDOT's claim.  *See* TEX. R. CIV. P. 97(a).  The only common thread is that both claims involve landscape services.  The facts concerning the alleged conversion of two checks in 2002 are not related to the purported underpayment of landscape services over a six-year period as asserted in the counterclaim.

As previously discussed, *Reata* and its progeny have found counterclaims to be germane, connected with and properly defensive for clear and obvious reasons.  For instance, in *Reata,* the city of Dallas asserted a cross claim for negligence against Reata. 197 S.W.3d at 373.  Reata's claim was likewise for negligence; it merely mirrored the city of Dallas's claim.  *Id*.  Similarly, in *Mendez* and *Carter*, retaliatory discharge claims were clearly germane to the employment contracts between the physicians and the governmental entities because all issues revolved around the same contractual relationship.  Although none of the post-*Reata* cases are factually similar, the scenario presented in *Langley* is more akin to this case.  There, the court found the relocation,

7

misrepresentation and breach of contract claims were not germane to, connected with, and properly defensive to the eminent domain action by the governmental entity. *Langley*, 232 S.W.3d at 367. The counterclaim here does not meet the elements required by *Reata*; it is not germane to, connected with and properly defensive to TxDOT's conversion claim. TxDOT's first issue is sustained.

## IV. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

We also agree with TxDOT that Crockett was required to, but never attempted to utilize the administrative procedures in place for its complaints regarding underpayment for work done. When the Legislature vests exclusive jurisdiction in an administrative agency, trial courts have no jurisdiction over claims governed by the relevant statute until the administrative process is exhausted. *State v. Fidelity and Deposit Co. of Md.*, 223 S.W.3d 309, 311 (Tex. 2007). The Texas Transportation Code authorizes TxDOT to "establish procedures for the informal resolution of a claim arising out of a contract described by . . . Chapter 223." TEX. TRANS. CODE ANN. § 201.112 (Vernon Supp. 2007). Section 223.001 of the Texas Transportation Code states that TxDOT is to submit competitive bids for contracts for the improvement of a highway that is part of the state highway system or for materials used in the construction of or maintenance of a highway. *Id*. § 223.001 (Vernon 1999). Improvement includes "construction, reconstruction, maintenance, and the making of necessary plan or survey before beginning construction, reconstruction or maintenance." *Id*. § 221.001(2) (Vernon Supp. 2007). Here, it is

8

undisputed that the work performed came within the category of maintenance.[1]  The legislature has expressly determined that the transportation code provides the exclusive remedy for contract claims against TxDOT.  *Tex. Dept. of Transp. v. Jones Bros. Dirt & Paving Contractors*, 92 S.W.3d 477, 484 (Tex. 2002).  Because the Transportation Code's administrative remedies cover maintenance contracts, the trial court had no subject matter jurisdiction over Crockett's counterclaims.  TxDOT's second issue is sustained.

## V.  REQUEST FOR DECLARATORY RELIEF

TxDOT also argues that Crockett's request is not a proper one for declaratory relief.  We agree.  Private parties may not circumvent sovereign immunity by characterizing a suit for money damages as one for declaratory relief.  *City of Houston v. Williams*, 216 S.W.3d 827, 828-29 (Tex. 2007).  The only remedy sought by Crockett is for money damages.  In fact, its own prayer for relief asked the trial court to "render a judgment for any shortage to GCC" and render a "proper construction of the amounts to be paid under the contracts between the parties and require TxDOT to render a proper accounting to GCC."  TxDOT's third issue is sustained.

## VI.  CONCLUSION

The trial court had no subject matter jurisdiction over Crockett's counterclaim because it was not germane to, connected with and properly defensive to TxDOT's claim for conversion.  TxDOT's immunity has not been waived.  Additionally, the trial court had no jurisdiction because the Transportation Code set forth specific administrative remedies

---

[1]For instance, section 223.042 of the Transportation Code defines a maintenance project as "any routine or preventive maintenance activity."  TEX. TRANSP. CODE ANN. § 223.042(h) (Vernon Supp. 2007).  The term includes such activities as mowing, litter pick-up and herbicide spraying.  *Id*.

9

to address resolution of contracts such as the maintenance contracts at issue here, and Crockett did not exhaust its administrative remedies before filing suit. We reverse and render judgment dismissing Crockett's counterclaims for lack of subject matter jurisdiction.


ROSE VELA
Justice


Opinion delivered and
filed this 5th day of June, 2008.