

# NUMBER 13-11-00113-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MARCUS KYLE FREE,                                                    Appellant,

v.

CATHY DIANE LEWIS,                                                   Appellee.

### On appeal from the 347th District Court of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Garza

Appellant, Marcus Kyle Free, challenges the trial court's judgment awarding over $17 million in damages and a permanent injunction to appellee, Cathy Diane Lewis. Free argues that the trial court's judgment was erroneous because: (1) it unconstitutionally "coerc[es] payment of a civil debt" and "violates federal anti-peonage

statutes" by requiring "involuntary servitude"; (2) it awarded a permanent injunction compelling specific performance of a contract; (3) it awarded contract as well as tort damages; (4) it was based on a verdict that was corrected "after the jury had been discharged and mingled with the parties"; and (5) it was based in part on breach of contract even though the jury did not affirmatively find the existence of an enforceable contract. Free also contends the trial court erred by denying his motion for new trial. We affirm in part and reverse and render in part.

## I. BACKGROUND

Free, a physician, and Lewis, a nurse, were married in 1988. In September 2004, Free decided to leave the practice of medicine and instead attempt to make money by day trading securities. Free opened an investment account and Lewis gave him around $200,000 to invest in it. The $200,000 originated from offshore bank accounts owned by Lewis prior to the marriage and which were, therefore, her separate property. Free induced Lewis to give him the $200,000 by falsely representing to her that he had previously made substantial profits day trading with an account in his own name.

Free lost the entire $200,000 in short order and, "to compensate," he repeatedly withdrew additional funds from Lewis's offshore accounts without her knowledge or consent. Free's fraudulent actions—which involved his repeatedly forging Lewis's signature and having Lewis's bank statements rerouted to a private post office box to which only he had access—resulted in the loss of over $5.5 million of Lewis's separate property.

In October 2008, in an effort to reconcile with his family, Free executed a

2

"Restitution Agreement" in which he acknowledged his wrongdoing and agreed to "restore to Lewis the entire amount of funds fraudulently transferred . . . plus interest, and to cooperate in the prosecution of any civil suit against [the banks, brokerage firm], or any other entity in Lewis's efforts to recover her funds."  Free also agreed to "indemnify Lewis of any liabilities, debts, obligations, including attorney's fees, she may incur as a result of any of Free's acts and/or omissions."  The agreement required Free to provide Lewis with extensive financial disclosures and included detailed instructions as to how Free was to reimburse Lewis.  Specifically, Free agreed to deposit in Lewis's account, on a monthly basis, all salary or other compensation he may receive that exceeds $4,000 per month, as well as a prorated amount of any bonuses he may receive.[1]  The agreement further stated:

> Event of Default.  The following shall be considered an "Event of Default" under this agreement:  (i) the failure to abide by any term and provision of this Restitution Agreement; (ii) any false representation made with respect to any disclosure, or any failure to provide disclosures or documents requested by Lewis as provided in the disclosure section of this agreement; (iii) the loss of any employment; (iv) the filing of any bankruptcy, receivership.  Free shall give notice to Lewis of any Event of Default within three (3) days of said default.  Lewis shall provide written notice to Free to cure that default within thirty (30) days of said notice.  Upon failure of Free to cure the Event of Default, Lewis has the option of bringing action to enforce this Restitution Agreement or to bring an action against Free on the underlying Fraud.  Additionally, the death of Free, or filing of any bankruptcy or receivership by Free shall be considered equivalent to an "Event of Default," though in such event, no notice to cure shall be required by Lewis prior to instituting any appropriate action whether in bankruptcy court or probate court or other forum.

Lewis countersigned the agreement on January 6, 2009.

Lewis filed suit in Nueces County on February 12, 2009, alleging that Free defaulted under the agreement and also alleging fraud, breach of fiduciary duty, and

---

[1] Under the agreement, the amount of the compensation Free is entitled to keep per month automatically increases each year to track inflation.

3

conversion with respect to the underlying fraud committed prior to execution of the Restitution Agreement. Free denied the allegations and advanced several affirmative defenses to enforcement of the agreement, including: (1) lack of consideration; (2) duress, in that he signed the agreement only because Lewis threatened to pursue criminal charges against him and to permanently prevent him from seeing their daughter; and (3) unconscionability.

After trial, a jury found in favor of Lewis on all issues.[2] Over Free's objection, the trial court granted Lewis's motion for entry of judgment. The final judgment awarded Lewis: $2,200,000 in actual damages on the pre-2008 fraud, breach of fiduciary duty, and conversion claims; $15,500,000 in exemplary damages; $117,446.53 in trial attorney's fees[3]; and pre- and post-judgment interest. The final judgment also included a "Decree of Specific Performance" stating that the outstanding obligation on the Restitution Agreement as of the date of judgment was $6,943,052.16, and ordering Free to provide extensive regular financial disclosures to Lewis, as required by the Restitution Agreement. Finally, the judgment included a permanent injunction (1) restraining Free from spending "any monies received from any source" and (2) stating that "Free is entitled only to $4,000 (adjusted per inflation) per calendar month" and any amount he earns in excess of that must be deposited in an account for Lewis's benefit, all in accordance with the terms of the agreement. Free filed a motion for new trial, which was overruled by operation of law. See TEX. R. CIV. P. 329b(c). This appeal

---

[2] Out of all the affirmative defenses pleaded by Free, only one—duress—was submitted to the jury. Question number two of the jury charge asked, "Was Marcus Free's failure to comply with the Restitution Agreement excused?" and instructed that "[f]ailure to comply by Marcus Free is excused if the Restitution Agreement was made under duress caused by Diane Lewis." The jury answered "no."

[3] The judgment also awarded $20,000 in attorney's fees in the event Free appeals to this Court and Lewis prevails on appeal; and $22,000 in attorney's fees in the event Free appeals to the Texas Supreme Court and Lewis prevails there.

4

followed.

## II. DISCUSSION

### A.    Constitutional Arguments and Related Issues

By his first issue, Free contends that the trial court's judgment:  (1) violates the constitutional proscription against involuntary servitude, *see* U.S. CONST. amend. XIII ("Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction"); *see also United States v. Kozminski*, 487 U.S. 931, 952 (1988) (defining "involuntary servitude" as "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process"); (2) unconstitutionally subjects him to imprisonment for debt, *see* TEX. CONST. art. I, § 18 ("No person shall ever be imprisoned for debt."); (3) violates the federal anti-peonage statute, *see* 42 U.S.C. § 1994[4]; and (4) constitutes an impermissible garnishment of current wages, *see* TEX. CONST. art. XVI, § 28 ("No current wages for personal service shall ever be subject to garnishment, except for the enforcement of court-ordered:  (1) child support payments; or (2) spousal maintenance.").

---

[4] The statute, entitled "Peonage abolished," states:

The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited in any Territory or State of the United States; and all acts, laws, resolutions, orders, regulations, or usages of any Territory or State, which have heretofore established, maintained, or enforced, or by virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void.

42 U.S.C. § 1994.

5

Free did not object to the judgment at trial on any of these grounds. *See* Tᴇx. R. Aᴘᴘ. P. 33.1 (regarding preservation of error). Accordingly, we may reverse on these grounds only if they constitute "fundamental error." *See In re B.L.D.*, 113 S.W.3d 340, 351 (Tex. 2003). The Supreme Court of Texas has concluded that, in the context of civil appeals, fundamental error is a narrow doctrine, to be used only in rare instances. *Id.* at 350–51. In *B.L.D.*, the Court recognized that, despite the fact that the fundamental-error doctrine has been labeled "'discredited,'" *id.* at 350 (quoting *Cox v. Johnson*, 638 S.W.2d 867, 868 (Tex. 1982) (per curiam)), the doctrine has been employed in "rare instances" to review "certain types" of unpreserved or unassigned error in civil cases. *Id.* For example, the doctrine has been invoked to review unpreserved issues regarding: (1) whether the record shows on its face that the trial court lacked jurisdiction, *id.* (citing *McCauley v. Consol. Underwriters*, 157 Tex. 475, 304 S.W.2d 265, 266 (1957) (per curiam)); (2) the failure to give mandatory statutory admonishments in a juvenile delinquency proceeding, *id.* (citing *In re C.O.S.*, 988 S.W.2d 760, 767 (Tex. 1999)); and (3) the constitutionality of the burden of proof instruction in a juvenile delinquency proceeding, *id.* (citing *State v. Santana*, 444 S.W.2d 614, 615 (Tex. 1969)). The Court noted that its application of the fundamental-error doctrine in the latter two cases rested on the "quasi-criminal" nature of juvenile delinquency cases. *Id.* (citing *C.O.S.*, 988 S.W.2d at 765; *Santana*, 444 S.W.2d at 615). In *B.L.D.*, the supreme court declined to extend the fundamental-error doctrine to jury charge error in parental termination cases. *See id.* at 351.

None of the errors alleged by Free in his first issue fall within the narrow scope of the fundamental-error doctrine as recognized by the supreme court in the civil context. *See id.* Accordingly, the doctrine does not apply, and we overrule the issue.

**B.      Specific Performance as Remedy for Breach of Contract**

By his second issue, Free argues that the trial court erred in awarding a permanent injunction requiring specific performance of the Restitution Agreement, for three reasons.  First, he argues that injunctive relief was improper because Lewis conceded, and the jury found, that money damages were an adequate remedy. Second, he contends that specific performance of the Restitution Agreement is forbidden because present performance of the contract is not possible.  Third, he contends the award of injunctive relief is void because it was not based on a jury finding.

In examining whether specific performance via injunctive relief[5] is available as a contractual remedy, we generally examine whether (1) an adequate remedy at law exists, (2) present performance is possible, (3) the agreement contains precise terms capable of enforcement, and (4) the injunction comports with the terms of the agreement.  *Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 487 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).  Free does not dispute that the Restitution Agreement "contains precise terms capable of enforcement" or that the injunction comports with those terms.  *See id.*

_____

[5] The final judgment contained one section entitled "Specific Performance" and a separate section entitled "Permanent Injunction."  The former section included only (1) a statement of the amount outstanding and payable under the Restitution Agreement as of August 30, 2010, and (2) an incorporation and restatement of the disclosure requirements as set forth in the Restitution Agreement.  The latter section restated the payment provisions of the Restitution Agreement.  For purposes of this analysis, and despite the section titles, we consider both sections together to be a permanent injunction requiring specific performance of the Restitution Agreement.

7

We first address Free's contention that the jury implicitly found, and Lewis conceded, that money damages were an adequate remedy for Free's breach of contract. Question number seven of the jury charge asked, in its entirety: "What sum of money, if paid now in cash, would fairly and reasonably compensate Diane Lewis for [Free's] failure to comply with the Restitution Agreement? Answer in dollars and cents, if any[.]" The jury answered: "6,943.052.16."[6] Free argues that the jury implicitly found, by its answer to jury charge question number seven, that an award of actual damages would be an adequate remedy for Lewis. He further contends that Lewis, by submitting the question, conceded that actual damages can reasonably compensate her. We disagree. Courts will not enforce contractual rights by permanent injunction unless the aggrieved party shows an inadequate remedy at law and irreparable injury. *Id.*; *see Canteen Corp. v. Republic of Tex. Props., Inc.*, 773 S.W.2d 398, 401 (Tex. App.—Dallas 1989, no writ) ("Generally, contractual rights are not enforced by writs of injunction, since inadequate remedy at law and irreparable injury are rarely shown when a suit for damages for breach of contract is available."). An "irreparable injury" is one for which actual damages will not adequately compensate the injured party or the damages cannot be measured by any certain pecuniary standard. *Cytogenix*, 213 S.W.3d at 487

___

[6] It is important to emphasize that the trial court's final decree did *not* contain a money judgment for the amount of damages found by the jury in its answer to question number seven. Rather, the judgment contained money judgments of: (1) $2,200,000, reflecting actual damages on the fraud, breach of fiduciary duty, and conversion claims, all of which were based on Free's acts prior to the execution of the Restitution Agreement in October 2008; (2) $15,500,000 in exemplary damages; (3) $117,446.53 for trial attorney's fees; and (4) conditional appellate attorney's fees.

Rather than awarding a money judgment for the amount of damages found by the jury to be attributable to Free's breach of contract, the trial court apparently chose, by granting Lewis's motion for entry of judgment, to remedy the breach of contract claims by instead awarding a permanent injunction compelling specific performance of the contract. This is despite the fact that none of Lewis's written pleadings—including a third amended petition filed after trial with leave of court—request permanent injunctive relief.

8

(citing *Canteen Corp.*, 773 S.W.2d at 401). Here, the evidence showed that the amount of damages caused by Free's failure to comply with the Restitution Agreement "cannot be measured by any certain pecuniary standard" because, in the words of Lewis, it "involve[s] an impossible mix of Free's future wages, bonuses, and other benefits, future Federal and State income tax rates, and changes in the average Consumer Price Index." As noted, the Restitution Agreement requires Free to make monthly payments to Lewis to repay his losses, and the amount of each monthly payment is indeed dependent on the amount Free earns in any given month, the amount of taxes applied to those earnings, with the amount adjusted annually for inflation. We find that Lewis has shown an inadequate remedy at law and irreparable injury.

However, it is also well-established that, to order specific performance of a contract via an injunction, present performance must be possible. *Id.* (citing *Canteen Corp.*, 773 S.W.2d at 401). "A court should not decree future contractual performance by requiring a party to perform a continuous series of acts, extending through a long period of time, over which the court exercises its supervision." *Id.* at 487–88 (citing *Canteen Corp.*, 773 S.W.2d at 401; *Tex. & Pac. Ry. Co. v. City of Marshall*, 136 U.S. 393, 407 (1890); *Am. Hous. Res., Inc. v. Slaughter*, 597 S.W.2d 13, 15 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.)); *see Beckham v. Munger Oil & Cotton Co.*, 185 S.W. 991, 992 (Tex. Civ. App. 1916); *United Coin Meter Co. v. Johnson-Campbell Lumber Co.*, 493 S.W.2d 882, 888 (Tex. Civ. App.—Fort Worth 1973, no writ) ("It is a settled principle that a court of equity will ordinarily decree specific performance only when it can dispose of the matter in controversy by a decree capable of present performance . . . .") (citing 81 C.J.S. *Specific Performance* § 75, at 584); *see also*

*Samson Lone Star, L.P. v. Hooks*, No. 01-09-00328-CV, 2012 Tex. App. LEXIS 4353, at *69 (Tex. App.—Houston [1st Dist.] May 31, 2012, no pet.) (mem. op.); *Pickard v. LJH Enters.*, No. 01-07-01105-CV, 2010 Tex. App. LEXIS 2727, at *9 (Tex. App.—Houston [1st Dist.] Apr. 15, 2010, no pet.) (mem. op.). Instead, absent a significant public interest, parties to a private contract are left to their remedies at law. *Cytogenix*, 213 S.W.3d at 487 (citing *Canteen Corp.*, 773 S.W.2d at 401).

The permanent injunction awarded in this case is a prime example of the type of remedy that Texas courts have, for over a century, strived to avoid in breach of contract cases. The portion of the judgment entitled "Permanent Injunction" states, in its entirety, as follows:

1. EXCEPT AS WHERE OTHERWISE PROVIDED HEREIN, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Marcus Kyle Free is immediately and permanently restrained from spending any monies received from any source, including without limitation [Free's current employer], and any other present or future employer, contractor, principal, or payor of any kind, or whether this remuneration is characterized as wages, fees, draws, bonuses, or some other characterization. This includes any amounts received from any governmental body for benefits, taxes, tax credits, or tax reimbursements, and includes, further, any rebates received from any entity, and any bonuses received by Free in addition to his regular salary.

2. IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that [with] respect to any such amounts received, Free is entitled to only $4,000 (adjusted per inflation) per calendar month whether said amount is in the form of cash or as a result of other remuneration, including housing, welfare or health benefits. Any amounts in excess of $4,000 per calendar month, net only of any withheld Federal income or State income taxes relating to those earnings and not of any other deductions, are to be placed in the "Account" as further defined herein, to be distributed in accordance with the parties' agreement or order of this Court. Adjusted for inflation, said amount through October 2010 is $4,285.04. Said amounts shall be applied to the $6,9043,052.16, which is the Restitution Amount under the Restitution

10

Agreement as of August 30, 2010, and any post-judgment interest on that amount from the date of judgment until paid.

3.  IT IS FURTHER ORDERED, ADJUDGED AND DECREED that within one day of receipt by Free of any monies from his employer, contractor, principal, or payor, including any rebates, reimbursement of taxes of any kind, bonuses of any kind, Marcus Kyle Free is to obtain a cashier's check of said amounts and send such check by Federal Express to the law firm of Harris & Greenwell, or its designee, who shall then deposit said cashier's check in the "Account" as further defined herein.

4.  IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Free, be, and hereby is, commanded forthwith to desist and refrain from destroying any financial, tax, judicial, or other records of any kind.

5.  IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the law firm of Harris & Greenwell or its designee shall place such funds in an interest bearing account (the "Account"), and shall thereafter pay from that fund, amounts due to Cathy Diane Lewis under the Restitution Agreement, subject to any provision for its attorney's fees until such have been paid. Any amounts paid for attorney's fees shall not be considered as credits under the Restitution Amount.

6.  IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that any amounts currently in the registry of the Court shall be delivered over to Lewis and her attorney, Harris & Greenwell.

The final judgment also ordered Free to "obtain a life insurance policy on his life in the amount of $5,000,000.00, with such terms are [sic] acceptable to Lewis, and denominating the beneficiary of such policy in a manner as elected by Lewis . . . ."

This permanent injunction requires Free to deposit with Lewis's attorneys a certain amount of money every month, by a specific method, with the precise amount of the payment only determinable once it is certain how much Free earned in that month and what the proper adjustment for taxes and inflation would be. The order states that Free is "entitled" to $4,000 per month but it bars Free from "spending any monies received from any source" without any explicit exception. It commands Free not to

11

destroy any "records of any kind."  It requires Free to obtain a life insurance policy with terms "acceptable to Lewis."  Enforcement of this decree would unquestionably require constant supervision by the trial court over an indeterminate number of years or decades.[7]  Present performance is not possible, and Lewis has identified no significant public interest compelling an order of specific performance; therefore, specific performance via injunction was improper.[8]  *See, e.g., Cytogenix*, 213 S.W.3d at 487 (citing *Canteen Corp.*, 773 S.W.2d at 401).

We sustain Free's second issue in part and reverse those portions of the final judgment awarding permanent injunctive relief requiring specific performance as a remedy for Free's breach of contract.[9]  We proceed to consider Free's remaining issues.

## C.    Election of Remedies

---

[7] By way of example, if Free is able to consistently earn $15,000 in monthly after-tax income, he would be required to pay $11,000 each month to Lewis, not taking into account inflation adjustments.  At that rate, it would take him 631 months—that is, over 52 years—to pay off his $6,943,052.16 debt to Lewis.

[8] In her appellate brief, Lewis states:

The restitution structure [as provided in the permanent injunction] is of great importance to Lewis and it is part and parcel of her bargained for consideration.  It is impossible to suggest that a money judgment in the amount of $6,943,052.16, which . . . relegates Lewis to the cumbersome and costly post-judgment collection process, is equivalent to an orderly repayment structure contemplated under the Restitution Agreement.  In short, Free is better off if the Restitution Agreement is not enforced by permanent injunction and specific performance, and Lewis will be much worse off.  That is exactly why Free wants the injunction reversed.  Why Free—the fraudfeasor *par excellence*—should be better off for breaching the Restitution Agreement, and Lewis—the innocent victim—worse off is something that conscience simply cannot justify.

Lewis has not, however, cited any authority establishing a "conscience"-based exception to the well-established rule that, to order specific performance of a contract via an injunction, present performance must be possible.  *See Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 487 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing *Canteen Corp. v. Republic of Tex. Props., Inc.*, 773 S.W.2d 398, 401 (Tex. App.—Dallas 1989, no writ)).  We decline to fashion such an exception here.

[9] We have noted that Lewis's written pleadings did not actually request permanent injunctive relief.  In light of our conclusion, however, we need not address whether that fact is fatal to the permanent injunction.  *See* TEX. R. APP. P. 47.1.  Moreover, we need not address Free's argument that the permanent injunction was invalid because it was not based on a jury finding.  *See id.*

By his third issue, Free contends that the trial court erred in rendering a final judgment for both contract damages and tort damages. He claims that, "[w]hile Lewis was entitled to submit jury issues to determine the 'greatest satisfaction,' she cannot be awarded the contract damages and the tort claims that the contract sought to extinguish." In response, Lewis contends that the Restitution Agreement did not contain a waiver or release of any claims on the part of Free, and she argues that the tort and contract claims addressed different injuries and therefore the award of relief under both theories did not constitute a double recovery. We do not address this issue because Free has not directed this Court to any case law, statute, or other authority in support thereof. *See* TEX. R. APP. P. 38.1(i). His third issue is overruled.

## D.    Correction of Jury Verdict

By his fourth issue, Free alleges that the award of $2,000,000 in economic loss damages on Lewis's tort claims is invalid because it reflected a post-discharge correction of a mistake in the initial jury verdict. Instead, he argues, a new trial should have been awarded. *See In re Bradle*, 83 S.W.3d 923, 927 (Tex. App.—Austin 2002, orig. proceeding) ("'[W]hen the verdict has been affirmed in open court and the jury have separated and become accessible to the parties, the only remedy for a mistake is by setting the verdict aside and granting a new trial . . . .'") (quoting *Caylat v. Houston E. & W. Ry. Co.*, 113 Tex. 131, 252 S.W. 478, 482 (1923)).

Question number eight of the jury charge asked: "What sum of money, if paid now in cash, would fairly and reasonably compensate Diane Lewis for damages proximately caused by [Free's fraud, breach of fiduciary duty, and conversion]?"[10] The

---

[10] Question number eight was accompanied by the following instruction:

13

charge asked the jury to answer separately for (a) mental anguish sustained in the past, (b) mental anguish that Lewis will in reasonable probability sustain in the future, and (c) economic loss. The jury answered "$200,000.00" to part 8(a), zero to part 8(b), and "$2,000.00" to part 8(c). When the verdict was reached, the trial court read it in open court. The following then occurred:

THE COURT: . . . . Court is going to accept the verdict of the jury as the verdict of this court. I thank you very much for your time and attention. It is not easy serving as jurors but we appreciate your time very much.

What I generally do is I excuse you to the jury room. You may have some questions either for the court or the attorneys. So the attorneys and I will go back and visit with you for a little bit. You are released from your instructions. You can talk to anyone about the case or you don't have to talk to anyone. But in case you have any lingering questions, we will be happy to answer that.

Thank you again for you time.

(Jury is excused to the jury room.)

THE COURT: We are back on the record. We were going to— the attorneys and the judge were going to talk to the jury and the presiding juror let us know that one of the responses—one of the answers was incorrect. That was on Question Number 9(c). Instead of the 2,000 that was initially said, it was 2 million. Is that the jury's verdict?

JURY[11]: Yes, it is.

[Free's counsel]: 8(c).

Consider the elements of damage listed below [past mental anguish, future mental anguish, and economic loss] and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

[11] As in the reporter's record.

THE COURT:               What did I say? Okay. It is 8(c). That's $2 million. That was the verdict of the jury, correct?

PRESIDING JUROR:   Yes.

The trial court then asked each individual juror if that was their verdict; each of the six jurors replied "yes." The jury charge included in the clerk's record shows that "$2,000.00" was written, crossed out, and replaced with "2 million."[12]

Free's counsel did not express any timely objection to the trial court regarding the correction of the verdict.[13] Moreover, we do not believe the fundamental-error doctrine applies here. *See In re B.L.D.*, 113 S.W.3d at 350–51. Accordingly, Free has waived any error. *See* TEX. R. APP. P. 33.1. In any event, we note that the comments of the trial court upon calling the jury back to the courtroom show that, although the jury was technically free to discuss the case with anyone, it did not actually do so prior to the correction of the verdict. Free therefore has not shown that he was harmed by any error. *See* TEX. R. APP. P. 44.1(a) (stating that an error is not reversible unless it "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals").

We overrule Free's fourth issue.

**E.**      **Jury Question on Existence of Enforceable Contract**

By his fifth issue, Free argues that the trial court erred by rendering judgment on the jury's contract verdict because the jury was not asked whether an enforceable agreement existed. Question number one of the jury charge asked: "Did Marcus Free

---

[12] The corrected figure was initialed by the presiding juror.

[13] Free did make this objection in his motion for new trial and in his objection to Lewis's motion for entry of judgment. However, it is incumbent upon an appellant to object in a timely manner. *See* TEX. R. APP. P. 33.1.

fail to comply with the Restitution Agreement?" The jury answered "yes." The jury was not asked whether the Restitution Agreement was enforceable. Free contends that Lewis's failure to submit such a question precluded the trial court from rendering judgment on the verdict, because the existence of an enforceable contract was not conclusively established as a matter of law. He claims that the evidence, in fact, showed that there was no enforceable contract because "there was no common understanding" as to the essential terms of the Restitution Agreement, or alternatively, because the agreement was not supported by consideration.[14]

In response, Lewis asserts that (1) Free waived the issue because he did not himself submit a question on the affirmative defenses of lack of consideration or ambiguity, and (2) no question was necessary in any event because an enforceable contract was established as a matter of law.

Without deciding whether an enforceable contract was established as a matter of law, we agree with Lewis that Free has not preserved the issue for appeal. Texas Rule of Civil Procedure 279 provides, in part, as follows:

> Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived. When a ground of recovery or defense consists of more than one element, if one or more of such elements necessary to sustain such ground of recovery or defense, and necessarily referable thereto, are submitted to and found by the jury, and

---

[14] Free points to a single clause in the Restitution Agreement in arguing that "there was no common understanding" as to the contract's essential terms. Specifically, the agreement provided in part: "Upon failure of Free to cure the Event of Default, Lewis has the option of bringing action to enforce this Restitution Agreement or to bring an action against Free on the underlying Fraud." Free contends that there was no "meeting of the minds" as to this clause because he believed that it allowed Lewis to seek only one remedy in the event of default—i.e., he believed she could either sue on the contract or on the underlying fraud, but not both—whereas Lewis believed that both remedies were available to her. Free further argues that the clause's use of the word "or" rather than "and/or," and its use of the word "option," show conclusively that Lewis was forbidden from suing for both breach of the agreement and the underlying fraud in the event of default. Alternatively, Free contends that, if Lewis's interpretation of this clause controls, then there is no consideration supporting the contract.

16

one or more of such elements are omitted from the charge, without request or objection, and there is factually sufficient evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted element or elements in support of the judgment. *If no such written findings are made, such omitted element or elements shall be deemed found by the court in such manner as to support the judgment. . . .*

Tex. R. Civ. P. 279 (emphasis added). Here, the ground of recovery challenged by Free, breach of contract, contains more than one element. *See, e.g., Tex. Dep't of Transp. v. Crockett*, 257 S.W.3d 412, 416 (Tex. App.—Corpus Christi 2008, pet. denied) ("The elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."). One of those elements, breach, *see id.*, was submitted and found by the jury. Another one of the elements, the existence of an enforceable contract, *see id.*, was not. No objection was lodged at the charge conference to the lack of a question on enforceability. The trial court did not make written findings as to the omitted element. Under such circumstances, Rule 279 directs us to deem the omitted element to be found "in such manner as to support the judgment." Tex. R. Civ. P. 279. Accordingly, the existence of an enforceable contract must be deemed as found by the jury. *See id.* We overrule Free's fifth issue.

## F.    Motion for New Trial

By his sixth issue, Free contends that the trial court erred in denying his motion for new trial. He argues specifically that he was entitled to a new trial because: (1) there was jury misconduct; (2) there was newly discovered evidence; (3) the damages question was "improperly predicated"; (4) the exemplary damages finding could not

have been based on a breach of fiduciary duty, and (5) there was cumulative error. In his appellate brief, Free has not cited any case law, statute, or other authority in support of this issue. Accordingly, it is waived. *See* TEX. R. APP. P. 38.1(i).

## III. CONCLUSION

We reverse the portion of the trial court's judgment awarding specific performance via permanent injunctive relief as a remedy for Free's breach of contract. We render judgment, in full accordance with the jury's verdict, that Lewis have and recover judgment against Free for actual damages attributable to Lewis's breach of contract claim in the amount of $6,943,052.16.[15] *See* TEX. R. APP. P. 43.3 (stating that, when reversing a trial court judgment, an appellate court must generally render the judgment that the trial court should have rendered). The amount shall bear post-judgment interest as provided in the trial court's judgment. The remainder of the judgment is affirmed.

DORI CONTRERAS GARZA
Justice

Delivered and filed the
9th day of August, 2012.

---

[15] We note that, in the event Free files for bankruptcy protection, this judgment will not be dischargeable. *See* 11 U.S.C. § 523(a)(2)(A) (providing that a discharge under the Bankruptcy Code "does not discharge an individual debtor from any debt . . . for money . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . ."). Moreover, the judgment may be domesticated in Free's home state of Michigan, *see* MICH. COMP. LAWS SERV. §§ 671.1171–1179 (LexisNexis 2012) (Uniform Enforcement of Foreign Judgments Act), and garnishment of wages is an available method of executing a judgment in that state, *see id.* §§ 600.4011–4012 (LexisNexis 2012).