PINKSTON et al. v. PINKSTON.

No. 3159.

Court of Civil Appeals of Texas.

Waco.

March 18, 1954.

Rehearing Denied April 8, 1954.

W. E. Pinkston and W. H. Hall, Dallas, for appellants.

Dawson & Dawson, Corsicana, for appellee.

McDONALD, Chief Justice.

This is a suit to set aside an order of the Probate Court approving an $18,300 claim allowed by Will E. Pinkston as Administrator of his father's estate, in favor of Will E. Pinkston as Executor of his mother's estate.

L. A. Pinkston died in 1926 and by will provided that the oldest of his sons, Nat, Tom, Will E., and Lucian, should be Executor of his estate. Nat qualified as Executor and served until his death in 1947. Tom then qualified and served until his death in 1948. At Tom's death Will E. Appellant herein, qualified as Administrator and is now serving as such. In 1950 Mrs. Clara Pinkston, surviving widow of L. A. Pinkston, died, and her son Will E. Pinkston (Appellant) was appointed Executor of her estate. For detailed background see Pinkston v. Pinkston, Tex.Civ. App., 254 S.W.2d 196, involving the same parties in other litigation over the Pinkston estate.

L. A. Pinkston's estate consisted of a community ½ interest in approximately $150,000 of liquid assets, and approximately $24,000 in debts. His will provided that the executor should *"at his mother's request sell sufficient securities to pay debts, and then deliver to her one half of all remaining securities and money. Hold other half and give her cash income from same while she lives single. Then divide the remainder equally between Executor and brothers."* Pinkston v. Pinkston, supra, construed this will to set up a trust for the widow of L. A. Pinkston in one-half of the community estate and vested remainder in the 4 children.

Nat Pinkston, after he qualified as Executor of his father's estate, paid off $9000 of the estate's indebtedness, and executed a renewal note to the Corsicana bank for the balance of $15,000. In 1928, and prior to the time the renewal note was due, his mother, Mrs. Clara Pinkston, paid off the $15,000 note out of her separate funds. She thereafter received the income from the ½ of community estate set up in trust until her death in 1950.

The first 3 inventories filed by Nat, Tom and Will E. Pinkston as Executors of the estate of L. A. Pinkston listed no debt or claim against the estate. In 1950 Will E. Pinkston filed an inventory of his mother Mrs. Clara Pinkston's estate, in which no claim in favor of her estate was listed. In 1951 Will E. Pinkston filed an amended inventory in the estate of L. A. Pinkston, in which a claim of $18,300 was shown against the estate, in favor of the estate of Mrs. Clara Pinkston. This claim was grounded on the fact that the will of L. A. Pinkston provided that *"securities would be sold to pay debts"*, and that the $15,000 debt to the Corsicana bank was paid by Mrs. Clara Pinkston. One-half of the debt was hers since it was a community debt, and the other one-half was L. A. Pinkston's and the contention was made that when she paid his one-half she was entitled to a claim against his estate for same. The $18,300 claim represents the original $7500 paid with interest at 6% from 1928.

All during Mrs. Clara Pinkston's lifetime she never asserted any claim against her deceased husband's estate—nor did the Executors of his estate, who were her sons —nor show by inventory or in anywise assert the claim against their father's estate.

It appears that Tom Pinkston died intestate without wife or children, and that Nat died leaving a widow, Mrs. Susa Dale Pinkston, Appellee herein (whose right to Nat's interest in the L. A. Pinkston estate was established in Pinkston v. Pinkston, supra); and that Will E. Pinkston, Lucian Pinkston and Mrs. Susa Dale Pinkston are the beneficiaries of the L. A. Pinkston estate. It further appears that Nat Pinkston and Tom Pinkston died prior to their mother—so that Will E. and Lucian Pinkston are the beneficiaries of the estate of their mother. In other words, Appellants Will E. Pinkston and Lucian Pinkston each have an approximate ½ interest in the estate of their mother, whereas they each have an approximate ⅓ interest, together with Mrs. Susa Dale Pinkston, Appellee herein, in the estate of their father, L. A. Pinkston.

On May 22, 1951, the County Judge of Navarro County signed and approved the claim for $18,300 made by Will E. Pinkston, Administrator of his father's estate, against himself as Executor of his mother's estate.

On 1 June 1951 this suit was filed in the County Court by Mrs. Susa Dale Pinkston, Appellee herein, to set aside the order approving this claim. (Approval of the claim diminished the L. A. Pinkston estate in which Appellee has ⅓ interest, by $18,300, and enriched by a like amount the Clara Pinkston estate, in which Appellee has no interest. By the same token—the estate in which the *Administrator* has a ⅓ *interest* is diminished in favor of the estate in which he has a ½ *interest*.)

After a trial, the County Court entered judgment setting the order aside and Appellants herein appealed to the District Court. Upon a trial de novo, the District Court granted Appellee's motion for in-

structed verdict setting aside the order allowing the claim, as well as a subsequent order directing a sale of stock of the estate for its payment, and entered judgment accordingly.

This appeal is made by Will E. Pinkston in his various capacities, and by Lucian Pinkston, upon 16 Points, but which present only one real question for determination by this court—that is, whether or not the Appellee established by the undisputed evidence her asserted right to have the order approving the $18,300 claim in favor of the estate of Mrs. Clara Pinkston against the estate of L. A. Pinkston set aside.

Appellee (as Plaintiff) contended that it should be set aside because it was procured by fraud—that the debt never existed in fact or law; and that if it ever had it was long since barred by limitation.

 The undisputed evidence is that Mrs. Clara Pinkston paid the Corsicana bank the $15,000 voluntarily and that it was her purpose to wipe out the debt; that she was thoroughly conversant with the affairs of the estate; that she enjoyed the dividends from all of the remaining securities during the 24 year balance of her lifetime; that she never asserted any claim against the estate; that the 3 Executors of the estate filed inventories showing no claims due the estate. There were ample assets in the L. A. Pinkston estate to pay the debt to the bank. The will provided that at Mrs. Pinkston's request sufficient securities should be sold to pay the debts. Mrs. Pinkston elected to pay the debt out of her own estate and assets and to receive the revenue from securities belonging to the L. A. Pinkston estate for the balance of her life, which she did. Mrs. Pinkston was not forced to do this to protect any rights whatsoever. The note was not even matured. The will made ample provision for payment. She made a voluntary election. It is our view that she could not, by her voluntary act in paying an indebtedness which was not due, and for which adequate provision had been made and upon which she was jointly liable, force upon the estate the position of debtor to herself, and collect

the dividends from stock (which was to be sold to pay the debt at her election) for 24 remaining years of her life,—and also claim 6% interest on the amount paid on the debt. To do otherwise would permit a life tenant to enjoy all the revenues during his life, and liquidate the corpus of the estate at the same time through the accumulation of interest, so that the vested remaindermen would have nothing.

In the case at bar Mrs. Clara Pinkston had no such intention. During life she advised constantly with her Executor sons, but never made any claim whatsoever. Her 3 Executors all filed inventories, never listing the claim. It was not until after her death that Appellant Will E. Pinkston, the Administrator of the L. A. Pinkston estate, filed an amended inventory setting up the claim. In previous inventories he listed every item down to a 2¢ file and 3 bottle openers at 1¢ each, but was silent as to the $18,300 claim due from the estate. The doctrine of subrogation sought in favor of the Clara Pinkston estate does not apply in favor of a party who voluntarily surrenders her rights, or makes a voluntary election, or in any situation wherein its application would be inequitable. It is our view that no debt in law or fact ever existed. See: Huey v. Brand, Tex.Civ.App., 92 S.W.2d 505; 50 Am.Jur. 693; Ramey v. Cage, Tex.Civ.App., 90 S.W.2d 626; Kerens Nat. Bank v. Stockton, 127 Tex. 326, 94 S.W.2d 161.

 The undisputed evidence further reflects that the order of the Probate Court in approving the $18,300 claim was procured by the fraudulent representations of W. E. Pinkston that the claim was being made for the purpose of settlement of the estate, and that all parties were agreeable thereto. Judge Huffstutler, the Probate Judge who approved the claim, so testified, and further that he relied on these representations; and W. E. Pinkston, though present in the Trial Court as an attorney, a witness and a litigant as well as in the capacity of Executor of the Mrs. Clara Pinkston estate and Administrator of the L. A. Pinkston estate, never denied, disput-

ed or contradicted his testimony. Mrs. Susa ·Dale Pinkston, widow of Nat Pinkston, testified that she was asserting an interest in the L. A. Pinkston estate (accorded her in Pinkston v. Pinkston, supra) and that not only was there no agreement of settlement but that Appellants herein were contesting her efforts to assert an interest.

"Fraud practiced on the court is always ground for vacating the judgment, as where the court is deceived or misled as to material circumstances". 49 C.J.S., Judgments, § 269; Texas Employers Ins. Ass'n v. Scott, Tex.Civ.App., 242 S.W.2d 915; Price v. Smith, Tex.Civ.App., 109 S.W.2d 1144; 31 Am.Jur. 231.

Moreover, Appellant Will E. Pinkston as Administrator of the estate of L. A. Pinkston owed a duty of fidelity and good faith to all who had an interest in that estate, including Mrs. Susa Dale Pinkston, which he breached. (See 13 Tex.Jur. p. 747).

Further, the undisputed evidence shows that the claim forming the basis for the original probate order was completely barred by limitation, it being 23 years old. The claim was at best a debt. It was not incident to any question of co-tenancy or the partitioning of property. The Statute of Limitations is not suspended by reason of any facts of record in this case. An executor or administrator is not permitted by law to pay an indebtedness barred by limitation. To do so is a fraud upon the estate. (See 14 Tex.Jur. p. 68).

This suit was a direct attack on the order approving the $18,300 claim—originally filed in the same court which approved the claim. It is our view that under the undisputed evidence, the order approving the claim must be set aside, for the reasons hereinabove stated, and that the Trial Court properly granted the motion for instructed verdict.

In this connection all of Appellants' Points have been carefully considered, and are overruled. The judgment of the Trial Court is accordingly affirmed.