

# NUMBER 13-18-00040-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**RR STANLEY, DALTON DAVIS D/B/A**
**JO-DAN ROYALTY COMPANY, AND**
**VINELLA DAVIS,**                                         **Appellants,**

**v.**

**DEBORAH CEPHUS COLLINS,**
**WILL CEPHUS, HAROLD ANDREWS,**
**ROSALIND CARTER AND**
**RONDAL CEPHUS,**                                         **Appellees.**

---

### On appeal from the 77th District Court of Freestone County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Hinojosa and Tijerina
### Memorandum Opinion by Chief Justice Contreras

Appellants RR Stanley, Dalton Davis d/b/a JO-DAN Royalty Company, and Vinella

Davis challenge the trial court's judgment in favor of appellees Deborah Cephus Collins,

Will Cephus, Harold Andrews, Rosalind Carter, and Rondal Cephus. After a bench trial, the trial court found appellants liable for conversion and fraud and it awarded appellees actual and exemplary damages. On appeal, appellants argue that the trial court should have dismissed the suit as an impermissible collateral attack on a prior judgment, and that the evidence was legally insufficient to establish the elements of appellees' claims. We affirm.[1]

## I. BACKGROUND

This case concerns the mineral estate in certain land in Freestone County. On June 19, 2003, pursuant to a lawsuit filed by Devon Energy Operating Company, LP (Devon), the 77th District Court appointed a receiver to execute a lease in favor of Devon and to distribute royalties arising therefrom to the unknown heirs of the most recent record owner, Peter Daniel, who died in 1930. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 64.091(b) (providing that a district court may appoint a receiver for the mineral interest owned by a nonresident or absent defendant in certain circumstances). As relevant here, the June 19, 2003 order stated that Lillie Jones[2] and Blanche Williams, two of Peter Daniel's grandchildren, were owners of 37.5 net mineral acres in the subject property. The county clerk established accounts in the court's registry for the benefit of Jones and Williams and their unknown heirs. *See id.* § 64.091(h) ("Money consideration paid for the execution of a lease, assignment, or unitization agreement by the receiver must be paid to the clerk of the court in which the case is pending before the receiver executes the instrument. The court shall apply the money to the costs accruing in the case and retain any balance for

---

[1] This appeal was transferred from the Tenth Court of Appeals in Waco pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] Also referred to in the record as Lizzie Jones.

the use and benefit of the nonresident or person of unknown residence who owns the mineral or leasehold interest. Payments made at a later time under the lease, assignment, or unitization agreement shall be paid into the registry of the court and impounded for the use and benefit of the owner of the mineral or leasehold interest."). Those accounts had together accumulated around $1 million in royalties as of 2009.

In 2009, appellant Dalton Davis (Dalton) sought to acquire the mineral interests of Jones's and Williams's unknown heirs. He contacted Aline Marshall, Jones's granddaughter, in order to determine the heirs' identities. Marshall signed an affidavit stating that appellees are the among the rightful heirs, and the affidavit was recorded in the Freestone County public records. Dalton then contacted the heirs and offered to purchase their interests. Some heirs agreed to sell their interests, but appellees declined Dalton's offers.

The following year, in the same cause number as Devon's suit, Dalton petitioned the trial court for disbursement of the funds in the receivership accounts. At a hearing, Dalton testified that he and the other appellants had acquired all of the mineral interests owned by the heirs of Jones and Williams. Dalton produced an affidavit executed by Mary Jones Parks,[3] another heir identified by Marshall. In her affidavit, Parks stated that Lillie Jones was her grandmother, that Blanche Williams was her great aunt, and that both women died intestate. According to Parks, at the time of their respective deaths, Blanche Williams had no children and Lillie Jones had two children: L.K. Jones and William Jones, Parks's father. Parks stated in her affidavit that her father had eight children in total; that six of them survive, including herself; that one of her deceased brothers has three

---

[3] Also referred to in the record as Mary Lou Jones and Mary Parks Davis.

3

surviving heirs; and that her other deceased brother had no children. She stated L.K. Jones had no children.

The trial court issued an order on June 8, 2010, stating that appellants are the successors-in-interest to the heirs of Lillie Jones and Blanche Williams. The order further provided:

> 6) IT IS THEREFORE ORDERED that all monies held in receivership, trust, or suspense for the heirs of Blanche Williams and the heirs of Lillie Jones shall be disbursed to the successors in interest named herein, specifically 25% to Vinella Davis, 37.5% to R.R. Stanley, and 37.5% to Dalton Davis and Jo-Dan Royalty Company, after ad litem fees are first paid.
>
> 7) IT IS FURTHER ORDERED that Devon Energy Operating Company, LP and its successors and assigns shall pay all future royalty payments heretofore attributable to Blanche Williams and Lillie Jones directly to Vinella Davis, R.R. Stanley, and Dalton Davis/Jo-Dan Royalty Co. [o]r their assigns, as their interests appear herein·above.

No party appealed the June 8, 2010 order. On July 13, 2010, funds were distributed from the receivership account as follows: $371,149.78 to Dalton; $371,149.78 to R.R. Stanley; $247,433.19 to Vinella Davis; and $10,000 to the attorney ad litem appointed for the then-unknown heirs.

In the instant lawsuit, filed in 2012, appellees claimed that more than $165,000 of the funds in the receivership accounts were rightfully their property, and they argued that appellants "continued to collect royalties from several gas unit wells" on the subject land. Appellees asserted that Dalton and/or Vinella Davis "for a reported payment of $12,000.00 convinced [Parks] to sign a false affidavit or statement, which completely ignored the heirship of [appellees] herein." Appellees sought declaratory relief, including a judgment quieting title, as well as damages for conversion and attorney's fees. Appellants answered the suit, denying the factual allegations and asserting affirmative defenses including res judicata and collateral estoppel.

4

At a bench trial on September 21, 2015, Parks testified that she did not prepare her 2010 affidavit; rather, it was prepared for her, and she signed it. She stated that she and some of her siblings also signed over their mineral interests to Dalton in exchange for $12,000.[4] Parks testified, contrary to her affidavit, that her grandmother Lillie Jones had three children: her father William, Robert, and Vera.[5] She agreed that Vera is the grandmother of appellees and that appellees are therefore her cousins. When asked why she "executed a statement that was not correct" in 2010, Parks replied: "Because at the time [Dalton] had given me tons of information that sounded as if it could actually be possibly true. . . . [W]hen we discussed it, I was told that he could prove everything that he said, and we trusted and believed that." Parks later agreed that she was "desperately short of money" at the time she agreed to sign the affidavit.

Without objection, a program from the 1982 funeral of William Jones Jr., Parks's father, was entered into evidence. The program stated that William Jones Jr.'s parents were William M. Jones and Lizzie Jones. According to the program, William Jones Jr. had eight children, one of which predeceased him. It states that he was survived by his wife, five sons, five daughters, twenty-one grandchildren, three great-grandchildren, and one sister, Vera Lee. When asked if the program is "a true and correct statement of your dad's heirship," Parks replied: "As to my opinion, yes, sir, it is, because up until meeting Dalton Davis I had no idea that there could be any other record."

On cross-examination, appellants' counsel introduced copies of death certificates for William Jones Jr. and for Vera Lee. Both death certificates indicated that the

---

[4] Dalton Davis died before the 2015 bench trial.

[5] Parks later testified that her father had nine siblings, including Robert and Vera, but that the other siblings did not have children.

5

decedent's father's name was William Jones Sr. and the decedent's mother's maiden name was Lizzie English. Counsel also introduced a death certificate for Veline Cephus, appellees' mother, which stated that Veline's mother's maiden name was Vera L. Jones.

Appellants Vinella Davis and Robert Raymond "RR" Stanley were called by appellees as adverse witnesses. Vinella Davis declined to testify on Fifth Amendment grounds. Stanley stated that he received a check for over $370,000 from Dalton in 2010. The checks written on the clerk's receivership account were entered into evidence, showing that Stanley had in fact been paid directly by the district clerk's office. Stanley testified: "I was thinking it came from Dalton personally, though, because he owed me the money." He denied knowledge of any fraud perpetrated by Dalton.

Marshall testified that she met with Dalton and her cousin Vince Jones in 2009. She provided the men with some information, they put it in an affidavit, and she signed it. She affirmed the truth of the facts set forth in her affidavit, and the affidavit was entered into evidence. Marshall denied that Dalton ever explained to her that "this had an impact on how about a million dollars was supposed to be divided up." She stated that Dalton paid her about $30,000 for her share of the mineral interest at issue.

On cross-examination, at appellants' counsel's request, Marshall identified a 1927 death certificate for Lizzie Jones. The death certificate states that the decedent was born in 1879, that the decedent's father's name is Clayte English, and that the decedent's mother's name is Mahalila Ohmbues. Counsel also produced a copy of an 1880 Freestone County census document appearing to list Peter Daniel and his children, including Mattie Daniel, the mother of Williams and Jones. The census document appears to state that Mattie Daniel was six years old at the time.

6

At another hearing on June 20, 2017, appellee Harold Andrews testified that Dalton and Vince Jones approached him in 2009 or 2010 and asked about purchasing his share of the mineral interests at issue. Andrews became suspicious when Dalton could not tell him what the interests were worth, so Andrews decided not to sell his interest to Dalton. Later, Andrews discovered that the funds in the receivership accounts had been disbursed, and he hired counsel to look into it, leading to this litigation.

On September 19, 2017, the trial court rendered final judgment awarding appellees $166,622.12 in actual damages from Vinella Davis and Dalton's estate representing "funds which [appellants] falsely induced this Court to disburse upon the perjurious testimony of [Dalton] and Vinella Davis and which funds were, in part, the property of [appellees] . . . ." The judgment also awarded $30,000 in exemplary damages against Vinella Davis and Dalton's estate "based upon the intentional tortious conduct of [Dalton and Vinella] Davis in obtaining funds held by this Court in for the benefit of its lawful owners which include [appellees]." As to Stanley, the court awarded appellees $61,858.30 in actual damages.[6] Finally, the court declared that appellees are the rightful mineral owners of "one-sixth (1/6) of the Decedents' aggregate 37.5 undivided net mineral acres" out of the Daniel property, and that one-sixth of any royalties payable to appellants shall be remitted to a trust account for the benefit of appellees. The trial court later issued extensive findings of fact and conclusions of law, including the following:

> Although [appellants] have argued that [appellees'] tort claims asserted in this lawsuit are barred as a collateral proceeding after the entry of a final order in another case, the Court finds no merit in this argument, and concludes that the conduct of Defendants in perpetrating a fraud upon this Court (and by extension upon Plaintiffs for whom this Court held property),

---

[6] The trial court stated in its findings of fact that this amount represents "one-sixth of the actual amount [Stanley] received and converted, specifically, one-sixth of $371,149.78 . . . ." Dalton's estate and Vinella Davis were ordered jointly and severally liable for this amount as well.

7

as well as the conversion of funds from the registry of the Court, constitutes new and separate causes of action which are not precluded by estoppel, res judicata, or other legal principle. To hold otherwise would invite fraud and perjury in similar proceedings.

This appeal followed.

## II. DISCUSSION

### A. Collateral Attack

By their second issue, which we address first, appellants argue that the trial court erred by denying their "request to dismiss" appellees' suit "on the basis of collateral attack." Appellants argue specifically that appellees could not collaterally attack the June 19, 2003 or June 8, 2010 judgments because they did not plead or prove that those judgments are void. No motion to dismiss on these grounds appears in the record; therefore, we construe this issue as a "matter of law" challenge to the legal sufficiency of the evidence supporting the trial court's rejection of appellants' res judicata and collateral estoppel defenses.

#### 1. Standard of Review

In an appeal from a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). In conducting a legal sufficiency review, we consider all of the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *Id.*

Res judicata and collateral estoppel are affirmative defenses which the defendant bears the burden to prove. *See* TEX. R. CIV. P. 94. When a party attacks the legal

8

sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989).

### 2. Applicable Law

A party relying on the affirmative defense of res judicata must prove: (1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). A party asserting collateral estoppel must establish that: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Sysco Food Services, Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). The doctrine "applies when the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990).

A void order is subject to collateral attack in a new lawsuit, while a voidable order must be corrected by direct attack. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d at 863 (citing *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985)). Unless successfully attacked, a voidable judgment becomes final. *Id.* "A judgment is void only when it is apparent that the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *Id.* (citing *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex. 2005)); *see*

*Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003) (noting that errors other than lack of jurisdiction, such as "a court's action contrary to a statute or statutory equivalent," merely render a judgment voidable so that it may be "corrected through the ordinary appellate process or other proper proceedings").

### 3. Analysis

In response to appellants' second issue, appellees contend that "[n]o evidence of a collateral attack upon the 2003 judgment can be found in the record in this case" and that "[t]he so-called 2010 judgment is not a judgment at all." They argue that the 2010 order "addressed only particular property which had been awarded to the heirs of Lillie Jones and Blanche Williams by the 2003 Judgment." Appellees note that, at the 2010 hearing, the trial court observed that the appellants were seeking "just . . . an order to distribute the funds that are held in the registry of the court."

Appellees liken this suit to *Pinkston v. Pinkston*, a 1954 case where the Waco court of appeals affirmed the trial court's setting aside of an earlier order in a probate proceeding on the basis of fraud. 266 S.W.2d 515 (Tex. App.—Waco 1954, writ ref'd n.r.e.). In *Pinkston*, a probate judge rendered an order approving an heir's claim for $18,300 against the decedent's estate. *Id.* at 517. Ten days later, a different heir filed suit seeking to set the order aside, alleging that it was procured by fraud, and the trial court granted that request after a trial. *Id.* at 517–18. The appeals court affirmed the decision, noting that the "undisputed evidence" showed that the probate court's order was "procured by the fraudulent representations" of the first heir. *Id.* at 518. The Waco court observed that "[f]raud practiced on the court is always ground for vacating the judgment, as where the court is deceived or misled as to material circumstances." *Id.* at 519 (citing

*Tex. Emp'rs' Ins. Ass'n v. Scott*, 242 S.W.2d 915, 918 (Tex. App.—Amarillo 1951, no writ); *Price v. Smith*, 109 S.W.2d 1144 (Tex. App.—Eastland 1937, writ dism'd)).

*Pinkston* is distinguishable from the instant case. As the Waco court noted, the underlying suit in that case "was a direct attack on the order approving the $18,300 claim—originally filed in the same court which approved the claim." *Id.* The cases cited in *Pinkston* are distinguishable as well because the plaintiff in each proceeding sought a bill of review, which also constitutes a direct attack. *See Scott*, 242 S.W.2d at 918; *Price,* 109 S.W.2d at 1144.

Nevertheless, we agree with appellees that their suit is not a collateral attack on the 2003 or 2010 judgments. The 2003 judgment set forth that the unknown heirs of Lillie Jones and Blanche Williams were owners of 37.5 net mineral acres in the Daniel property, and it provided for a receiver to collect royalties on behalf of those heirs. That judgment did not purport to identify any of the unknown heirs. The 2010 judgment stated that appellants are the rightful heirs of Jones and Williams, but the instant suit does not seek to have that order vacated or set aside, strictly speaking. Rather, appellees' suit seeks redress for the alleged malfeasance which gave rise to the 2010 decision. As the trial court concluded, these are separate causes of action, and appellants' entitlement to recovery on these causes does not depend on a showing that the 2003 or 2010 orders were void.

In any event, res judicata and collateral estoppel may apply only when the parties in the present proceeding are identical to or in privity with the parties to the first proceeding. *See Travelers Ins. Co.*, 315 S.W.3d at 862; *Sysco Food Services, Inc.*, 890 S.W.2d at 801. It is undisputed that appellees were not parties to the Devon suit, nor were

11

they in privity with any parties thereto. They did not have a "full and fair opportunity to litigate the issue" of heirship in the prior suit. *See Eagle Props., Ltd.*, 807 S.W.2d at 721. Accordingly, the trial court in this case did not err in rejecting appellants' res judicata and collateral estoppel defenses. We overrule appellants' second issue.

## B.    Legal Sufficiency

Appellants' remaining issues attack the legal sufficiency of the evidence supporting the trial court's findings on appellees' affirmative claims. A legal sufficiency challenge will be sustained only if the record shows (1) a complete absence of evidence of a vital fact, (2) the court is barred by the rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *City of Keller*, 168 S.W.3d at 810. Evidence is more than a scintilla if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011). Evidence is less than a scintilla is if it is "so weak as to do no more than create a mere surmise or suspicion that the fact exists." *Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010). Again, the ultimate test is whether the evidence would enable reasonable and fair-minded people to make the finding. *City of Keller*, 168 S.W.3d at 827. We view the evidence in the light most favorable to the finding, and we defer to the trial court's credibility determinations. *Id.* at 819, 822.

### 1.    Status as Heirs

By their fifth issue, appellants contend that the evidence was legally insufficient to establish appellees' status as heirs to the mineral estate at issue. By their first issue,

appellants argue that the evidence was "legally insufficient to prove standing" because "the only evidence presented . . . was conclusory opinion testimony." We address the issues together, as they both challenge the trial court's finding that appellees are rightful heirs of Jones and Williams.

Parks's 2010 affidavit stated that her paternal grandmother was born in 1890 and was named Lillie Jones. At the 2015 bench trial, Parks testified that her father was William Jones Jr. and that her paternal grandmother's maiden name was Lizzie English. William Jones Jr.'s death certificate states his mother's maiden name was Lizzie English, and Lizzie Jones's death certificate states that she was born in 1879. Appellants argue that

> [b]ased upon Parks['s] testimony that their heirship derives from Lizzie English who was actually born in 1879, then [appellees] could not have been heirs of Mattie Daniel because the Lillie Jones from Mattie Daniel was not one [and] the same as the Lillie Jones/Lizzie Jones from which [appellees] descend.

We disagree. Parks stated that the information she provided in 2010 was derived from Dalton and was at least partially incorrect. And there has never been any dispute that Parks is a rightful heir of Peter Daniel; the only question in this proceeding was whether appellees were *additional* heirs. And Parks testified that appellees are her cousins because Vera—Lillie's daughter—was appellees' grandmother. In any event, the trial court was entitled to believe all or part of Parks's 2015 testimony and to disbelieve all or part of her 2010 affidavit. *See City of Keller*, 168 S.W.3d at 819.

Appellants also point to Lizzie Jones's 1927 death certificate, which states that she was born in 1879 and that her mother's name was Mahalila Ohmbues, and the 1880 census document, which appears to show that Mattie Daniel was born in 1873 or 1874. According to appellant, "it is clear that [the] Lillie Jones testified to by Aline Marshall could not be the same Lillie Jones set forth in the 2003 Devon Judgment because the mother

13

of Lillie Jones in the 2003 Devon Judgment was Mattie Daniel not Mahalila Ohmbues." Appellants also contend that it is "biologically impossible for Mattie Daniel to be the mother of Lizzie English a/k/a Lillie English a/k/a Lillie Jones" because Jones was born in 1879, when Mattie Daniel was still a young child.

This evidence does not conclusively establish that appellees were not rightful heirs. *See id.* The 2003 judgment, of which the trial court took judicial notice, established that Blanche Williams and Lillie Jones were among the rightful heirs to Peter Daniel's estate. Parks testified that Vera Lee, appellees' grandmother, was a daughter of Lillie Jones. Although the evidence set forth above casts doubt on whether Mattie Daniel was actually the mother of Lillie or Vera, there is no suggestion or allegation that the 2003 judgment was procured by fraud or was otherwise incorrect. Appellees' claims in the instant proceeding related only to the 2010 judgment, which held that appellants were the only heirs of Jones and Williams, and which appellees claimed was based on false testimony.

The 2003 judgment, along with the 2015 testimony of Parks, Marshall, and Andrews, constituted legally sufficient evidence to support the trial court's finding that appellees were rightful heirs. We disagree with appellants' assertion that the trial testimony was conclusory and therefore not probative. Although much of the witnesses' testimony was based on hearsay from relatives, there was no objection made on this basis, and hearsay testimony is explicitly permitted by rule in this context. *See* TEX. R. EVID. 804 (providing that, when the declarant is unavailable to testify, the rule against hearsay does not exclude a statement about "the declarant's own birth, adoption, legitimacy, ancestry, marriage, divorce, relationship by blood, adoption or marriage, or

14

similar facts of personal or family history, even though the declarant had no way of acquiring personal knowledge about that fact"); *see also* TEX. R. EVID. 802 ("Inadmissible hearsay admitted without objection may not be denied probative value merely because it is hearsay.").

We overrule appellants' first and fifth issues.

### 2.    Conversion

By their fourth issue, appellants argue there was no evidence to support the trial court's finding that they are liable for conversion of appellees' property. To prevail on a conversion claim, a plaintiff must generally show: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Stroud Prod., L.L.C. v. Hosford*, 405 S.W.3d 794, 811 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Tex. Dep't of Transp. v. Crockett*, 257 S.W.3d 412, 416 (Tex. App.—Corpus Christi–Edinburg 2008, pet. denied). Appellants contend there was no evidence of the first three elements.

Again, we disagree. The bench trial testimony set forth above established that appellees were among the rightful heirs to Lillie Jones and Blanche Williams. This evidence was sufficient to show that appellees were "entitle[d] to possession" of a portion of the funds which accumulated in the receivership accounts since 2003. *See Stroud Prod., L.L.C.*, 405 S.W.3d at 811. Marshall's testimony established that Dalton knew of her affidavit, which indicated that appellees were heirs, at the time he represented to the trial court in 2010 that he had obtained all of the heirs' interests. Instead, according to

15

Parks, Dalton passed false information to Parks, which was then included in Parks's affidavit, which formed the basis for the court's 2010 order to distribute funds to appellants. Moreover, although Dalton passed away before the trial in this case, Vinella Davis declined to testify on Fifth Amendment grounds, and the trial court was free to make an adverse inference against appellants based on that fact. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) (concluding that Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them). The foregoing evidence, viewed in the light most favorable to the trial court's findings, established that appellants unlawfully and without authorization assumed and exercised control over appellees' share of the mineral interests, to appellees' exclusion. *See id.*

Finally, as appellees note, a plaintiff in a conversion case need not show the elements of demand or refusal (1) where the defendant's possession was acquired wrongfully, (2) after the conversion has become complete, or (3) where it is shown that a demand would have been useless. *McVea v. Verkins*, 587 S.W.2d 526, 531 (Tex. App.—Corpus Christi–Edinburg 1979, no writ); *see Whitaker v. Bank of El Paso*, 850 S.W.2d 757, 760 (Tex. App.—El Paso 1993, no writ) (holding that demand and refusal are not necessary to a conversion action "when the possessor's acts manifest a clear repudiation of the plaintiff's rights"); *see also Letot v. United Servs. Auto. Ass'n*, No. 05-14-01394-CV, 2017 WL 1536501, at *6 (Tex. App.—Dallas Apr. 27, 2017, pet. denied) (mem. op. on reh'g) ("The demand and refusal elements are not, however, required if other evidence establishes an act of conversion."). Here, the evidence established that appellants converted the property when they falsely represented to the trial court in 2009 that they

were the successors-in-interest to the only heirs of Williams and Jones. The trial court's 2010 order, based on those representations, resulted in appellants possessing the property. Because the possession was acquired wrongfully, appellees did not need to show demand or refusal to support their conversion action. *See McVea*, 587 S.W.2d at 531.

We overrule appellants' fourth issue.

### 3. Fraud

By their third issue, appellants contend there was insufficient evidence to support the trial court's finding that they committed fraud. Specifically, they argue there was no evidence that appellants made any misrepresentation to appellees. We need not address this issue because the trial court's damages awards were supported by a conversion theory, which we have already decided was supported by legally sufficient evidence. *See* TEX. R. APP. P. 44.1, 47.1.

### III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed the
7th day of November, 2019.

17